Calvin J. Stacey
Morgan M. Sorena
STACEY & FUNYAK
P.O. Box 1139
Billings, MT 59103-1139
Phone: (406)259-4545
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

_____

|  |  |  |
|---|---|---|
| HOLBROOK HOLDINGS, INC. | ) | CAUSE NO.: CV-24-175-BU-JTJ |
|  | ) |  |
| Plaintiff, | ) | Judge John Johnston |
|  | ) |  |
| v. | ) | **DEFENDANT MARC COHODES'** |
|  | ) | **BRIEF IN SUPPORT OF SPECIAL** |
| MARC COHODES, | ) | **MOTION TO STRIKE/ANTI-SLAPP** |
|  | ) | **MOTION PURSUANT TO O.C.G.A.,** |
| Defendant. | ) | **§ 9-11-11.1** |

_____

Defendant Marc Cohodes ("Cohodes"), by and through his counsel of record,

hereby submits this Brief in Support of Motion pursuant to O.C.G.A., § 9-11-11.1,

Georgia's "Anti-SLAPP" statute.

## I.    <u>INTRODUCTION</u>

Holbrook, a company with its principal place of business in Georgia that

admits to managing up to $1 billion in client investments, seeks to silence Cohodes

from discussing his opinions in a public forum related to Holbrook's investments

1

and its relationship with B. Riley, a company that Holbrook admits has an affiliation with an accused conspirator in a securities fraud investigation.   A lawsuit such as Holbrook's against Cohodes is exactly the reason States including Georgia have enacted "anti-SLAPP" statutes.

Utilizing a conflicts of laws analysis, Georgia substantive law applies to the case.   Accordingly, pursuant to O.C.G.A. § 9-11-11.1 (Georgia's anti-SLAPP statute), Holbrook's Complaint must be stricken and dismissed entirely.   Holbrook seeks to target and silence Cohodes from exercising his constitutional right to free speech in a public forum concerning issues of public interest and concern. Cohodes' speech is protected and meets the first prong of the Georgia anti-SLAPP statute analysis.   Holbrook will be unable to show a likelihood of prevailing on the merits of its libel claims against Cohodes, thus meeting the second prong of the analysis.   Accordingly, Cohodes respectfully requests this Court grant this anti-SLAPP motion and award Cohodes his reasonable costs and fees incurred.

## II.   <u>FACTUAL BACKGROUND</u>

On November 8, 2024, Holbrook filed its Complaint against Cohodes.   (Doc. 1).  Holbrook alleges that it is "an award-winning financial advisory firm" with a goal of providing "potential high risk-adjusted returns for clients" through two funds.  (Doc. 1, ¶¶ 1, 21-22).  Holbrook further alleges that as of February 2023 it

had eclipsed $1 billion in Assets Under Management, which is a measure of the market value of the investments Holbrook manages on behalf of its clients. (Doc 1, ¶ 23).

According to Holbrook's Complaint, one of Holbrook's two mutual funds holds B. Riley corporate bonds. (Doc. 1, ¶ 6). B. Riley is a publicly traded company on NASDAQ. (Doc. 1, ¶ 5). B. Riley has done business with an individual who has been accused of being a conspirator to a securities fraud conspiracy which has been investigated by the government. (Doc. 1, ¶ 53).

Holbrook has brought three libel per se claims against Cohodes related to posts that Cohodes made on the public forum X (formerly Twitter) regarding Holbrook's relationship with B. Riley and the B. Riley bonds held by Holbrook's fund. (Doc. 1, ¶¶ 85-116). The statements made by Cohodes include language such as "I think", "betcha", and "I am sure" with respect to what Cohodes believed to be the relationship between B. Riley and Holbrook. (Doc. 1, Exhibits A-C).

## III.  <u>LEGAL STANDARD</u>

The text of O.C.G.A. § 9-11-11.1(b)(1) makes clear that the analysis of an anti-SLAPP motion involves two steps. *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 261-62 (2021). First, the court must decide whether the party filing the anti-SLAPP motion has made a threshold showing that the

challenged claim is one "arising from" protected activity. O.C.G.A. § 9-11-11.1 (b)

(1).   *See Navellier v. Sletten*, 29 Cal. 4th 82, 124 Cal. Rptr. 2d 530, 52 P3d 703, 708

(Cal. 2002).   A party meets its burden by demonstrating that the act underlying the

challenged claim "could reasonably be construed as" fitting within one of the

categories spelled out in subsection (c). O.C.G.A. § 9-11-11.1(b)(1).   *See* O.C.G.A.

§ 9-11-11.1(c)(1)-(4); *Navellier*, 52 P3d at 708.   The second step of the analysis is

deciding whether the nonmoving party "has established that there is a probability

that [they] will prevail on the claim."   O.C.G.A. § 9-11-11.1(b)(1).   To meet this

burden, the party "must demonstrate that the complaint is both legally sufficient and

supported by a sufficient prima facie showing of facts to sustain a favorable

judgment if the evidence submitted by the plaintiff is credited."   *Wilkes*, 306 Ga. at

262, citing *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 46 Cal. Rptr. 3d

638, 139 P3d 30, 51 (Cal. 2006) (citation and punctuation omitted).

## IV.   <u>ARGUMENT</u>

### A.  Georgia Substantive Law Applies

Georgia substantive law applies in this case because Georgia has a more

significant relationship to the litigation.   It is the forum having the greatest interest

in the legal issues arising out of the particular facts of this case and is the jurisdiction

most intimately concerned with the outcome of this litigation.

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state. *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997). In this case, the forum state is Montana. Where a conflict arises regarding which state's substantive law applies to a particular action, the Montana Supreme Court has held that it applies the approach from the Restatement (Second) on Conflict of Laws. *Buckles v. BH Flowtest, Inc.*, 2020 MT 291, ¶ 10, 402 Mont. 145, 476 P.3d 422 (citing *Phillips v. GMC*, 2000 MT 55, ¶ 23, 298 Mont. 438, 995 P.2d 1002). The Restatement's conflict of laws analysis is two-part. *Buckles*, 2020 MT at ¶ 10; *Talbot v. WMK-Davis, LLC*, 2016 MT 247, ¶ 23, 385 Mont. 109, 380 P.3d 823. The Restatement, § 6, first asks whether the forum state has a statutory directive concerning choice of law applicable to the underlying cause of action and if it does, that statute is applied and no further inquiry is necessary. *Buckles*, 2020 MT at ¶10; *Talbot*, 2016 MT at ¶ 23 (citing Restatement (Second) Conflict of Laws § 6(1)). In Montana, no statutory directive exists.

Where no statutory directive exists, as is the case here, the Court considers the Restatement with the specific section of the Restatement that is applicable to the case. *Buckles*, 2020 MT at ¶ 11; *Talbot*, 2016 MT at ¶ 23.

Section 150 of the Restatement provides specific guidance on the choice of law for allegedly defamatory statements made on the internet. Section 150(3) states

that "when a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state."   The comments to Section 150 likewise note that, for corporations, the "principal place of business is the most important contact in the determination of which is the state of most significant relationship and hence that of the applicable law.   A legal person's principal place of business is the place where its reputation will usually be most grievously affected.   Other contacts to be considered are the state of incorporation or the state of organization of other sorts of legal persons, such as joint stock associations and business trusts.   Less weight will be given to these latter contacts in the determination of the state of most significant relationship than to the principal place of business of the legal person involved."   Section 150, cmt. f.

Here, Holbrook is incorporated in Oregon but has its principal place of business in Georgia.   Doc. 1, ¶ 15.   Holbrook contends in this litigation that Cohodes has caused harm to Holbrook's business and reputation through dissemination of defamatory falsehoods.   Doc. 1, ¶ 14.   It further contends that Cohodes accused Holbrook and "its leadership" of "breaching fiduciary duties to investors," "engaging in securities fraud," and has caused "enormous harm to

6

Holbrook and its business and reputation" as well as economic damages including loss of revenue and enterprise value.   Doc. 1, ¶¶ 60, 80, 81, 82.   Holbrook contends it has suffered injury to its reputation as a company with its principal place of business in Georgia – therefore, Georgia law applies under the analysis of the Restatement (Second) Conflicts of Laws.   *See Talbot v. Ainuu,* No. CV-23-66-BU-BMM, 2024 WL 896370, at \*4 (D. Mont. Mar. 1, 2024)   (applying the law of an individual plaintiff's home state, Washington, after assessing choice of law for defamation claims under the Restatement's test because (1) plaintiff resided in Washington at the time defamatory statements were made, (2) reputational harm occurred in Washington, and (3) Washington possessed a strong interest in applying its law to torts allegedly committed against one of its residents).

## B.   This Court Must Strike Holbrook's Claims Pursuant to O.C.G.A., § 9-11-11.1

### 1.   <u>History and Substance of Georgia's Anti-SLAPP Statute</u>

"Strategic lawsuits against public participation," or "SLAPPS," are meritless lawsuits brought not to vindicate legally cognizable rights, but instead to deter or punish the exercise of constitutional rights of petition and free speech by tying up their target's resources and driving up the costs of litigation.   *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 256-57 (2021).   To combat this practice, in 1996, the Georgia General Assembly added an anti-SLAPP provision to the Civil

Practice Act, O.C.G.A. § 9-11-11.1.   In 2016, the Georgia General Assembly revised O.C.G.A. § 9-11-11.1 to substantially track California's anti-SLAPP procedure as set out in California Code of Civil Procedure § 425.16.   *See* G. L. 2016, p. 341, § 2.   Georgia's Supreme Court has construed the Georgia anti-SLAPP statute only a handful of times since it was first enacted in 1996, and for the most part, those cases construed provisions of the anti-SLAPP statute that the 2016 amendment removed, making the pre-amendment version of O.C.G.A. § 9-11-11.1 of limited utility in interpreting the revised anti-SLAPP statute.   *See Wilkes*, 306 Ga. at 257-58 (citing various cases interpreting the pre-2016 version of §9-11-11.1).

Georgia's anti-SLAPP statute is expressly modeled after California's and, since the California Supreme Court has developed a considerable body of case law interpreting the text of its anti-SLAPP statute, Georgia courts look to California case law interpreting its anti-SLAPP statute for guidance.   *Wilkes,* Ga. at 258.

O.C.G.A. § 9-11-11.1(a) declares that "it is in the public interest to encourage participation by the citizens of Georgia in matters of public significance and public interest through the exercise of their constitutional rights of petition and freedom of speech," and that "the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process." Subsection (a) also provides that O.C.G.A. § 9-11-11.1 "shall be construed broadly

to accomplish these declarations." The rest of O.C.G.A. § 9-11-11.1 concerns anti-

SLAPP motions to strike a claim or to dismiss a complaint.

Subsection (b) provides the following:

A claim for relief against a person or entity arising from any act of such person or entity which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern shall be subject to a motion to strike unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim.

O.C.G.A. § 9-11-11.1 (b) (1).

Subsection (c) provides, in part, the following:

As used in this Code section, the term "act in furtherance of the person's or entity's right of petition or free speech under the Constitutional of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern" shall include:

[. . .]

(3) Any written or oral statement or writing or petition made in a place open to the public or a public forum in connection with an issue of public interest or concern; or

(4) Any other conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern.

O.C.G.A. § 9-11-11.1(c) (3)-(4). Accord Cal. Code Civ. Proc. § 425.16(e)(1)-(4)

(similar).

When determining whether statements were "in connection with an issue of

public interest or concern", Georgia courts consider "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occurred in the context of an ongoing controversy, dispute or discussion, or affected a community in a manner similar to that of a governmental entity." *Lane Dermatology v. Smith*, 360 Ga. App. 370, 378–79 (2021).

    a. **Holbrook's Claims Against Cohodes Arise From Cohodes' Speech In Connection With An Issue of Public Interest or Concern**

As discussed above, the first step of the anti-SLAPP analysis is to decide whether Cohodes has made a threshold showing that Holbrook's claims are ones "arising from" protected activity.   O.C.G.A. § 9-1-11.1(b)(1).   Cohodes must only show that the acts underlying the claims "could reasonably be construed as" fitting within at least one of the four categories spelled out in subsection (c).   Here, Holbrook has brought claims against Cohodes due to Cohodes' speech about Holbrook's business dealings.   Cohodes' speech which is the subject of this litigation was made in a public forum in connection with an issue of public interest or concern and therefore Cohodes meets the first prong of the anti-SLAPP analysis.

In determining whether statements are made in connection with an issue of public interest or concern, Georgia courts consider "whether the subject of the

speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occurred in the context of an ongoing controversy, dispute, or discussion, or affected a community in a manner similar to that of a governmental entity." *Lane Dermatology*, 360 Ga. App. at 378-79.

To start, Holbrook bases its entire Complaint on statements Cohodes made on X (formerly Twitter) about Holbrook's relationship with B. Riley, a public company traded on NASDAQ (Doc. 1, ¶ 50), including that Holbrook "has huge problems", owns "garbage", that he thinks he will "write a letter about [Holbrook] to the [SEC] about hold non Investment Grade Securities", and that it was his "bet" that Holbrook invested in B. Riley "garbage" in exchange for Bryant Riley touting Holbrook's fund to Bryant Riley's wealthy clients. Doc. 1, ¶¶ 59-64. In short, the entirety of Holbrook's Complaint against Cohodes is premised upon statements made publicly on X by Cohodes about Holbrook's funds, its investments in B. Riley, its prospects for future investors and current clients, and his "bets" as to why Holbrook was linked to or affiliated with B. Riley. Doc. 1, ¶¶ 59-73.

Holbrook admits in its Complaint that it is an "award-winning financial advisory firm" (Doc. 1, ¶ 1) with a goal of providing "potential high risk-adjusted return for clients" (Doc. 1, ¶ 21); that it has two funds (Doc. 1, ¶ 22) and by February

2023 had eclipsed $1 billion in Assets Under Management managed on behalf of clients (Doc. 1, ¶ 23).   Holbrook acknowledges in its Complaint that B. Riley is a public company traded on NASDAQ, that Holbrook has invested in B. Riley corporate bonds, and that B. Riley has done work with an individual who is alleged to be a conspirator in a securities fraud scheme.   Doc. 1, ¶¶ 50-53.

Cohodes' statements about Holbrook, which is the entire basis for Holbrook's Complaint, were protected speech pursuant to the United States Constitution and were in connection to a matter of public interest and concern.   There can be no doubt that Holbrook's dealings with B. Riley and B. Riley's dealings with individuals who may or may not be affiliated with a securities fraud scheme are matters of public concern and interest.

In *Morgan v. Mainstreet Newspapers, Inc.*, 368 Ga. App. 111 (2023), a city councilman filed a libel per se suit against a newspaper after the newspaper ran a front-page article about the councilman and his grievances about his neighbors. *Morgan*, 368 Ga. App. at 112.   The Georgia Court of Appeals held that the article dealt with a public issue and/or an issue of public concern because it involved zoning and code violations and an alleged nuisance that were being considered by the city attorney.   *Id*. at 116-17.

In *Harkins v. Atlanta Humane Soc'y*, 264 Ga. App. 356 (2003), the Georgia

Court of Appeals held that statements made by an individual about the humane society and the humane society's executive director were protected under the anti-SLAPP statute. *Harkins*, 264 Ga. App. at 361. The Court determined that the statements were in connection with an issue of public concern because 1) the statements were made on television and resulted in an investigation into the humane society by the county commission; and 2) the human society was accountable to the public for ineffective animal control or inefficient use of taxpayer funds. *Id.*

In *Wilkes*, the plaintiff brought suit against a law firm and one of its attorneys for an advertisement that the firm ran in a newspaper targeting patients of nursing homes owned by the plaintiffs. *Wilkes*, 306 Ga. at 252. The Georgia Supreme Court ruled the advertisement was free speech and in connection with an issue of public interest or concern, thereby triggering the application of Georgia's anti-SLAPP statute. *Id.* at 252-53.

Here, Cohodes' speech was certainly free speech under the United States Constitution. It further involves and was in connection to an issue of public interest or concern, as it relates to B. Riley, a publicly traded company, investments into B. Riley by Holbrook, and the affiliation between B. Riley and a potential conspirator in a securities fraud investigation. This is a matter of public interest or concern as it involves many clients' investments with Holbrook, and Cohodes has met his

13

burden in establishing prong one of § 9-11-11.1's analysis. This is consistent with the well-established principle under California law that "[c]onsumer information ... at least when it affects a large number of persons, also generally is viewed as information concerning a matter of public interest." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004).[1]

### b. <u>Holbrook is Not Likely to Prevail</u>

The second step of the anti-SLAPP analysis requires a determination of whether Holbrook has established that there is a probability that it will prevail on its claims against Cohodes. Holbrook will be unable to demonstrate that it is likely to prevail on its claims against Cohodes.

"A libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1 (a). Libel per se – the claims brought by Holbrook against Cohodes – involves, in relevant part, the following: 1) imputing to another a crime punishable by law; 2) charging a person with having some contagious disorder or with being guilty of some debasing

---

[1]The California Court of Appeals has held that a short seller's blog that published statements critical of a publicly traded company were in the public interest. *GTX Glob. Corp. v. Left*, No. B192626, 2007 WL 1300065, at *7 (Cal. Ct. App. May 4, 2007) (unpublished).

act which may exclude him from society; or 3) making charges against another in reference to his trade, office, or profession, calculated to injure him therein. O.C.G.A. § 51-5-4(a); *see Morgan*, 368 Ga. App. at 118.   Further, libel per se must involve words "which are recognized as injurious on their face – without the aid of extrinsic proof."   *Morgan*, 368 Ga. App. at 118.

As discussed above, in *Morgan v. Mainstreet Newspapers, Inc.*, a councilman brought libel per se claims based upon statements made in a newspaper about his conflicts with his neighbors.   *Id*. at 113.   The Georgia Court of Appeals held that the councilman's complaint was insufficient under the second prong analysis of the anti-SLAPP statute because the statements made in the newspaper article which were the basis for the libel per se claims brought by the plaintiff were non-actionable opinions.   *Id*. at 118-19.   Other statements which formed the basis of the libel per se claim, such as quotes accusing the councilman of violating codes with a camper on his property and implying that the councilman shot and killed a cow owned by his neighbors, did not rise to the level of libel per se because they did not charge that the councilman was guilty of a crime.   *Id*.

Similarly here, the speech which Holbrook basis its claims for libel per se upon were opinions rendered by Cohodes.   For example, Holbrook contends Cohodes post about "thinking" he will write a letter about Holbrook to the SEC about

holding non-investment grade securities was libel per se.    Doc. 1, ¶ 86.    This is not

libel per se – this is Cohodes voicing his thought that he might write a letter to the

SEC about Holbrook.    This does not rise to the level of libel per se.    Holbrook also

contends that Cohodes stating "[h]e is in on the fraud" and that he "bets" Riley Asset

Management owns "his" fund is libel per se.    Doc. 1, ¶ 97.    However, it is entirely

unclear who "he" is referring to, as of course Holbrook – the plaintiff here – is not a

man but rather a company, and it is clear that Cohodes was talking about what he

"bets" to be the truth, or in other words just his opinion.    Finally, Holbrook alleges

that Cohodes stating "I am sure there is a kickback from $RILY to him" also

constitutes libel per se – but again, it is unclear who the "him" is referring to and, in

any event, Cohodes is simply making his best guess or his opinion in this post.

None of the three posts at issue involve anything other than opinions by Cohodes

and do not rise to the level of libel per se.

Another illustrative case is *Weaver v. Millsaps*, 370 Ga. App. 513 (2024).    In

*Weaver*, the defendant posted statements online accusing the defendant of being,

among other things, a Neo Nazi, a member of the KKK, and a known felon of hate

crimes.    *Weaver*, 370 Ga. App. at 514.    The plaintiff filed a libel suit, and the

defendant moved to dismiss pursuant to Georgia's anti-SLAPP statute.    *Id*.    The

Georgia Court of Appeals held that the plaintiff had failed to meet his burden in

showing a probability that he would prevail on the merits of his libel claim because the plaintiff had no evidence that the statements were made with actual malice and that the defendant knew when she made her posts that the statements were not true. *Id.* at 516-18.   Similarly, Holbrook has no evidence that Cohodes has acted with actual malice.

Here, Cohodes' statements which are at issue in this litigation are matters of opinion regarding a publicly traded company, B. Riley, and its relationship with Holbrook, which admits it manages up to $1 billion in assets and whose dealings with B. Riley could impact its clients who have invested presumably substantial amounts of money into Holbrook.   Cohodes' opinions are permissible, just as the opinions made by the defendants in *Weaver* and *Morgan* were permissible, and Holbrook cannot establish based upon the allegations in the Complaint that it is likely to prevail on the merits of its libel per se claims against Cohodes.   The second prong of the anti-SLAPP statute is met.

## 2.   Cohodes Is Entitled To Recover Attorney Fees and Costs

Under the anti-SLAPP statute, "a prevailing moving party on a motion to strike shall be granted the recovery of attorney's fees and expenses of litigation related to the action in an amount to be determined by the court based on the facts and circumstances of the case."   O.C.G.A. § 9-11-11.1(b.1); *see also Barnwell v.*

*Trivedi*, 370 Ga. App. 522, 526 (2024) (awarding fees to the prevailing moving party on an anti-SLAPP statute).   Thus, should this Court grant this motion to strike, Cohodes respectfully requests that the Court order Holbrook to pay all reasonable attorney's fees and costs incurred in connection with this motion.   In that event, Cohodes would file a separately noticed motion to establish the amount of those fees and costs.

DATED this 25th day of February, 2025.

STACEY & FUNYAK

By:    /s/Calvin J. Stacey_____
Calvin J. Stacey
Morgan M. Sorena
Stacey & Funyak
100 N. 27th Street, Suite 700
Billings, MT   59101
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

*Counsel for Defendant Marc Cohodes*

18

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Rule 7.1(d)(2)(E) of Montana Federal Local Rules of Procedure, I certify that the foregoing document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word 2016 is <u>3,989</u> excluding caption, certificate of compliance and certificate of service.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of February, 2025, a copy of the foregoing ***Defendant Marc Cohodes' Brief in Support of Special Motion to Strike/Anti-SLAPP Motion Pursuant to O.C.G.A. § 9-11-11.1*** was served upon the following counsel of record by the following means:

|  | |
|---|---|
| 1,2,3 | CM/ECF |
| _____ | Hand Delivery |
| _____ | U.S. Mail |

1. Clerk of Court

2. Matthew J. Kelly
   Tarlow Stonecipher Weamer & Kelly, PLLC
   1705 West College Street
   Bozeman, MT   59715
   mkelly@lawmt.com

3. Andrew C. Phillips (*Pro Hac Vice*)
   Shannon B. Timmann (*Pro Hac Vice*)
   Hannah Menchel (*Pro Hac Vice*)
   MEIER WATKINS PHILLIPS PUSCH LLP
   919 18th Street NW, Suite 650
   Washington, DC 20006
   Email: andy.phillips@mwpp.com
   Email: shannon.timmann@mwpp.com
   Email: hannah.menchel@mwpp.com

By:    /s/Calvin J. Stacey_____

20