Matt J. Kelly
TARLOW STONECIPHER
WEAMER & KELLY, PLLC
1705 West College St.
Bozeman, MT 59715-4913
Telephone: (406) 586-9714
Facsimile: (406) 586-9720
mkelly@lawmt.com

Andrew C. Phillips (*Pro Hac Vice*)
Mark Thomson (*Pro Hac Vice Pending*)
Shannon B. Timmann (*Pro Hac Vice*)
Hannah Menchel (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 318-3655
andy.phillips@mwpp.com
mark.thomson@mwpp.com
shannon.timmann@mwpp.com
hannah.menchel@mwpp.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| HOLBROOK HOLDINGS, INC., | Civil Action No. CV-24-175-BU-JTJ |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE/ANTI-SLAPP MOTION PURSUANT TO O.C.G.A. § 9-11-11.1** |
| MARC COHODES, | |
| Defendant. | |

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ......................................................... **iii**

**INDEX OF EXHIBITS** .............................................................. **vi**

**INTRODUCTION** ......................................................................1

**BACKGROUND** ........................................................................1

**ARGUMENT** ............................................................................5

I.    Georgia's Anti-SLAPP Statute Does Not Apply to This Case. ......................5

    A.    Under Montana's Choice-of-Law Rules, Georgia's Anti-SLAPP Statute Doesn't Apply to This Litigation. ...............................6

    B.    Cohodes's Choice-of-Law Analysis Is Misguided. ............................13

II.   Even If Georgia's Anti-SLAPP Statute Applied, Cohodes's Motion Would Still Fail. ................................................................15

    A.    Cohodes's February and August Tweets Were About Holbrook. ......16

    B.    Cohodes's Tweets Were Not Nonactionable Statements of Opinion. 22

    C.    Holbrook Has Sufficiently Pled Actual Malice. .................................29

**CONCLUSION** ........................................................................**32**

**CERTIFICATE OF SERVICE** .................................................**34**

**CERTIFICATE OF COMPLIANCE** .........................................**35**

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Pol'y Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) ..................................................................... 5, 11

*Bell v. Johnson Publ'g Co.*,
   No. 7:16-cv-16, 2018 WL 357888 (M.D. Ga. Jan. 10, 2018) ............................22

*Bellemead, LLC v. Stoker*,
   280 Ga. 635 (2006) .............................................................................................24

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ...............................................................................30

*Boley v. A-1 Horton's Moving Serv., Inc.*,
   373 Ga. App. 574 (2024) ....................................................................................15

*Brown v. Gill*,
   792 Fed. App'x 716 (11th Cir. 2019) .................................................................29

*Bryant v. Cox Enters., Inc.*,
   311 Ga. App. 230 (2011) ............................................................................. 23, 25

*Carbone v. CNN, Inc.*,
   910 F.3d 1345 (2018) .........................................................................................11

*Carson v. Allied News Co.*,
   529 F.2d 206 (7th Cir. 1976) .............................................................................30

*Cianci v. New Times Publ'g Co.*,
   639 F.2d 54 (2d Cir. 1980) .................................................................................28

*Curtis Publ'g Co. v. Butts*,
   338 U.S. 130 (1967) ...........................................................................................31

*Davis v. Macon Tel. Publ'g Co.*,
   93 Ga. App. 633 (1956) ......................................................................................17

*Donald J. Trump for President, Inc. v. CNN Broad., Inc.*,
   500 F. Supp. 3d 1349 (N.D. Ga. 2020) ..............................................................24

*Equity Prime Mortg., LLC v. Greene for Congress, Inc.*,
    373 Ga. App. 441 (2024) .......................................................................32

*Gast v. Brittan*,
    277 Ga. 340 (2003) ........................................................................ 25, 26

*Gettner v. Fitzgerald*,
    297 Ga. App. 258 (2009) ............................................................... 25, 26

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010) ...................................................................11

*Goguen v. NYP Holdings, Inc.*,
    415 Mont. 356 (2024)................................... 6, 7, 8, 9, 10, 11, 12, 13, 14

*Harte-Hanks Commc'ns, Inc v. Connaughton*,
    491 U.S. 657 (1989) ..............................................................................30

*Jaillett v. Georgia Television Co.*,
    238 Ga. App. 885 (1999)............................................................... 24, 25

*Kuhn v. Tribune-Republican Publ'g Co.*,
    637 P.2d 315 (Colo. 1981) ...................................................................31

*Makaeff v. Trump Univ.,
    LLC*, 736 F.3d 1180 (9th Cir. 2013)....................................................11

*Martin County Bank v. Day*,
    73 Minn. 195 (1898)..............................................................................21

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1, 18 (1990) ................................................... 23, 25, 27, 28

*Miller v. Sawant*,
    18 F.4th 328 (9th Cir. 2021)..................................................................19

*Monge v. Madison Cnty. Records, Inc.*,
    802 F. Supp. 2d 1327 (N.D. Ga. 2011) ...............................................25

*Mortensen v. Bresnan Commc'ns, LLC*,
    722 F.3d 1151 (9th Cir. 2013) ...............................................................6

*Phillips v. GMC*,
    298 Mont. 438 (2000) ...................................................................... 6, 14

*Posadas v. City of Reno*,
    851 P.2d 438 (Nev. 1993) ....................................................................31

*Schafer v. Time, Inc.*,
    142 F.3d 1361 (11th Cir. 1998) ..........................................................30

*Smith v. Stewart*,
    291 Ga. App. 86 (2008) .......................................................................17

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .............................................................................29

*StopLoss Specialists, LLC v. VeriClaim, Inc.*,
    340 F. Supp. 3d 1334 (N.D. Ga. 2018) ...............................................26

*Van Liew v. Eliopoulos*,
    92 Mass. App. Ct. 114 (2017) .............................................................27

*Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*,
    306 Ga. 252 (2019) ..............................................................................15

## **Statutes**

OCGA § 9-11-11.1 ................................................................. 5, 6, 8, 9, 32

## **Other Authorities**

Restatement (Second) Conflict of Laws § 6 .............................. 6, 7, 8, 12

Restatement (Second) Conflict of Laws § 145 ............................. 12, 15

Restatement (Second) Conflict of Laws § 150 ....................... 13, 15, 16

## <u>INDEX OF EXHIBITS</u>

Exhibit 1 - February 29, 2024 Marc Cohodes Tweet

Exhibit 2 - August 13, 2024 Marc Cohodes Tweet

Exhibit 3 - August 13, 2024 Marc Cohodes Tweet Reply

Exhibit 4 - February 29, 2024 Marc Cohodes Tweet Reply

Exhibit 5 - February 29, 2024 Marc Cohodes Tweet Reply

Exhibit 6 – February 29, 2024 Marc Cohodes Tweet Reply Post

Exhibit 7 – September 16, 2024 Holbrook Holdings Letter to Marc Cohodes

Exhibit 8 – October 10, 2024 Marc Cohodes Letter to Holbrook Holdings

Exhibit 9 – December 27, 2023 Marc Cohodes Tweet

Exhibit 10 – October 22, 2024 Hedgeye TV's YouTube Video: Marc Cohodes Interview

**INTRODUCTION**

Plaintiff Holbrook Holdings brought this defamation action against Defendant Marc Cohodes to hold Cohodes responsible for a relentless, unhinged, and vindictive smear campaign he waged against Holbrook. Cohodes has filed a "special motion to strike," purportedly under Georgia's anti-SLAPP statute, seeking dismissal of Holbrook's claims. That motion should be denied for two reasons: (1) Georgia's anti-SLAPP statute does not apply in this case; and (2) even if it did, Holbrook easily satisfies its requirements.

**BACKGROUND**

Cohodes is a short seller, meaning he bets against the stock prices of companies he shorts and makes money when the companies' stock prices go down. (Compl. ¶ 2 [Dkt. 1].) When he takes a short position, he commonly announces it publicly then proceeds to levy attacks and criticism on his target company and its management, hoping the negative publicity will cause the stock price to drop. (*Id.*)

Cohodes has a flair for self-promotion, particularly on social media, where he's curated a cult-like fanbase that views him as an all-knowing sleuth with an eye for identifying companies engaging in fraud or other illegal activity, or otherwise "cooking the books." (*Id.* ¶ 3.) Thus, when he takes a short position and begins targeting a company, he'll often announce that he's determined the company is corrupt and run by criminals. (*Id.*)

1

In the fall of 2023, Cohodes announced on Twitter (now X) that he had a short position in the stock of an investment bank called B. Riley.  (*Id.* ¶ 5.)  As is his practice, Cohodes then began publicly accusing B. Riley and its management of corruption and fraud.  (*Id.*)  In the midst of Cohodes's attacks on B. Riley, Holbrook's CEO, Scott Carmack, took umbrage at Cohodes's transparent effort to gin up negative publicity about B. Riley, drive down its stock price, and monetize his short position.  (*Id.* ¶ 7.)  So Carmack published a short, factual tweet that was mildly critical of Cohodes's conduct and track record.  (*Id.*)

Carmack deleted the tweet fairly quickly—not because it was unfair or inaccurate, but because Cohodes's online army of zealous fans began inundating Carmack and Holbrook with abuse for daring to question Cohodes.  (*Id.* ¶ 8.)  Unfortunately for Holbrook, Cohodes—who has a well-earned reputation for being abrasive, belligerent, and highly sensitive to criticism—also saw the tweet before it was deleted.  (*Id.* ¶¶ 4, 8.)  And he was not happy about having his motives or track record impugned.  (*Id.* ¶ 8.)

Cohodes promptly turned his social media wrath on Holbrook, posting about the company at least 18 times on the day of Carmack's tweet.  (*Id.* ¶ 9.)  He leveled childish insults like calling Carmack an "asshat" and calling Holbrook's mutual fund a "bag of shit."  (*Id.*)  Had Cohodes merely satiated his vindictive impulses with sophomoric insults alone, though, that would have been the end of the matter.  (*Id.*

¶ 10.)  The problem—and the reason for this defamation action—is he didn't stop there.  (*Id.* ¶ 11.)

Instead, Cohodes began repeatedly tweeting accusations that Holbrook and its principals were engaged in securities fraud and an unlawful "kickback" scheme with B. Riley.  (*Id.*)  Cohodes repeated those and similar allegations on social media over the course of nearly a year, despite their lacking any basis in reality.  (*Id.* ¶ 12.) Indeed, Cohodes simply fabricated them from whole cloth to get revenge on Holbrook for having the temerity to question him.  (*Id.*)

Even after all that, things likely would have ended there had Cohodes simply done the responsible thing and acknowledged that his defamatory claims about Holbrook were not true.  (*Id.* ¶ 13.)  Holbrook gave him that chance, and Cohodes instead responded defiantly, essentially bragging about how he had managed to convince his acolytes that Holbrook was guilty of "corruption" and "malfeasance." (*Id.*)

Left with no choice, Holbrook filed the instant defamation action, asserting claims based on three of the many tweets Cohodes published in response to, and in the context of, Twitter discussions about Holbrook's operations:



**Marc Cohodes** ✔
@AlderLaneEggs

Subscribe    …

He also has a problem with $BW I think I will write a letter about @HolbrookHldgs to the @SECGov about hold non Investment Grade Securities.. I also wonder if the $RILY clients own his Shit Ass Mutual Fund.. Friends dont Let Friends own $HOBIX .. Good to see another $RILY victim on TILT on a Sunday @FriendlyBearSA @AureliusValue @joe_bananas9 .. I wonder if this guy is one of Parker Petite's illegit kids?



**Marc Cohodes** ✔
@AlderLaneEggs

Subscribe    …

He is in on the Fraud. betcha riley asset management owns his shit ass fund

11:17 PM · Feb 29, 2024 · **812** Views



**Marc Cohodes**
@AlderLaneEggs

Subscribe    …

I am sure there is a kickback from $RILY to him

🔘 **Lord Weary** @67585891sd · 17m
Replying to @AlderLaneEggs and @scottycarm
This is the portfolio of someone totally unqualified to manage money. He is either a moron or deliberating to lose money. Nobody could deliberately buy this portfolio thinking it will be profitable. It is a toxic waste site.

12:54 PM · Aug 13, 2024 · **3,069** Views

4

Instead of answering or filing a Rule 12(b)(6) motion to dismiss, Cohodes filed a "special motion to strike" under Georgia's anti-SLAPP statute, OCGA § 9-11-11.1.[1] (Dkt. 18.)

## ARGUMENT

This Court should deny Cohodes's motion for two reasons. First, because Cohodes has no discernible connection to Georgia, that state's anti-SLAPP statute cannot apply here. Second, even if the statute could apply, Holbrook's claims have more than sufficient merit to survive an anti-SLAPP challenge.

### I.    Georgia's Anti-SLAPP Statute Does Not Apply to This Case.

Cohodes fundamentally errs when he assumes that because a choice-of-law analysis might favor applying Georgia law ***to Holbrook's claims***, that necessarily means Georgia law applies to all other issues in this litigation, including the availability of specific defenses. (Mot. at 4-7.) That is not how Montana's choice-of-law rules operate, as Montana's Supreme Court has recently reaffirmed. With respect to the specific issue of whether Georgia's anti-SLAPP defense applies in this case, Cohodes fails to identify any interest Georgia might have in seeing its anti-SLAPP statute applied to protect the speech of a Montana citizen who has no

---

[1] Anti-SLAPP ("strategic lawsuit against public participation") statutes typically create a procedural defense to dispose of meritless lawsuits brought to chill speech about contentious public issues. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015) (Kavanaugh, J.).

connection to Georgia, who is subject to the jurisdiction and laws of Montana in his daily life, and who apparently published the defamatory falsehoods in Montana, his home state.  (*See* Compl. ¶¶ 16, 18, 43.)  Montana, by contrast, has an obvious interest in defining what defenses are or are not available to its own citizens who publish defamatory falsehoods.  That is why Montana law, not Georgia law, governs the availability of an anti-SLAPP defense here.

### A. Under Montana's Choice-of-Law Rules, Georgia's Anti-SLAPP Statute Doesn't Apply to This Litigation.

Georgia law provides for an anti-SLAPP defense.  OCGA § 9-11-11.1.  Montana law does not.  Whether Cohodes can avail himself of an anti-SLAPP defense thus poses a choice-of-law question.  To answer that question, this Court must apply Montana's choice of law rules, *see Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1161 (9th Cir. 2013), which incorporate the most-significant-relationship test from the Restatement (Second) of Conflict of Laws, *see Phillips v. GMC*, 298 Mont. 438 (2000) .

There's no mystery about how that test applies in a case like this.  Just last year, in *Goguen v. NYP Holdings, Inc.*, 415 Mont. 356 (2024), Montana's Supreme Court applied the most-significant-relationship test to decide whether a defamation defense was defined by the law of the defendant-speaker's home state or the plaintiff's.  As the *Goguen* Court emphasized, the state whose law governs a given defense is the state with the most significant relationship ***to that defense***, rather than

the state with the most significant relationship to the underlying claim or to the case as a whole. *Id.* at 368-69. That, the Court explained, is because § 145 of the Restatement requires "an issue-based approach for choice of laws"—commonly called dépeçage—whereby the law governing a given defense must be determined "independently of the underlying defamation claim." *Id.* at 369. It matters not, in other words, whether Holbrook's defamation claim arises under Georgia law; the choice-of-law analysis governing the anti-SLAPP issue is a distinct question, subject to a distinct analysis. *See id.* at 371.

Because there's a clear conflict between Georgia and Montana law when it comes to the anti-SLAPP defense, this Court must begin its choice-of-law analysis by considering the seven factors set out in § 6 of the Restatement. *Id.* at 370. Those factors are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) Conflict of Laws § 6(2). In applying those factors to decide whether a defamation defense applies, *Goguen* made clear that the relevant states'

7

relationships to the ***speaker*** are of particular significance, since defamation defenses are intended to protect speakers.  415 Mont. at 370, 371, 372, 374.  In *Goguen*, the Montana Supreme Court held that the § 6 factors overwhelmingly favored applying the law of the state where the speaker was domiciled and where he'd made the defamatory communications.  Here, similarly, the § 6 factors favor applying the law of Montana.

***First factor: Needs of the interstate and international systems.*** The first factor "supports the application of a state's law with the most significant relationship to the issue."  *Id.* at 370.  In *Goguen*, the Court held this factor supported applying the law of the speaker's state of domicile.  *Id.*  Because the defense at issue in that case was aimed at "protect[ing] the speaker," the Court explained, the first factor gave special weight to the speaker's home state's "significant policy interests and substantive law on the particular issue."  *Id.*  Here, that same approach supports applying Montana's law on anti-SLAPP defenses.  Montana has the most significant relationship to protecting its citizens' speech, particularly speech occurring in Montana and broadcast to Montanans (among others).  By contrast, Georgia's anti-SLAPP statute declares that its purpose is limited to protecting "participation ***by the citizens of Georgia*** in matters of public significance and public interest."  OCGA § 9-11-11.1(a) (emphasis added).  Georgia's anti-SLAPP statute thus expressly denies having any significant interest in Cohodes's defamatory tweets.

8

***Second and third factors: Relevant policies and interests of the forum state
and other interested states in determining the issue.*** The *Goguen* Court explained
that the second and third factors "address whether applying the law of a state would
further the intended purpose of that law." 415 Mont. at 371. These factors also
favored applying the law of the speaker's state of domicile, the Court reasoned,
because a state's "interest in fixing the scope of a privilege applicable to conduct
taking place within its borders is paramount." *Id.* Here, again, the reasoning from
*Goguen* supports applying Montana law to the defamatory publications of a Montana
citizen. By contrast, applying Georgia's anti-SLAPP statute to Cohodes's speech
plainly would not further that statute's purpose, which is to protect speech ***by
Georgians***. OCGA § 9-11-11.1(a).

  ***Fourth factor: Protection of justified expectations.*** The fourth factor "is less
important in tort law because justified expectations have less impact in tort cases."
*Goguen*, 415 Mont. at 372. Nevertheless, the *Goguen* Court held that this factor
favored applying the law of the speaker's state of domicile because the speaker
would have naturally anticipated being covered by the defenses available in its home
state. *Id.* The record in this case favors applying Montana law even more strongly,
as it shows that Cohodes admitted publishing his tweets while knowing next to
nothing about Holbrook—so he could not have had any reasonable expectation that
Georgia law would apply here just because Holbrook happens to have its principal

place of business in Georgia.  (Compl. ¶ 78.)

*Fifth factor: Basic policies underlying the law of the issue.*  The fifth factor only applies when there are merely minor differences between the relevant laws of the interested states.  *See Goguen*, 415 Mont. at 373.  Here, the relevant difference between Georgia's and Montana's laws is not minor, since Georgia law recognizes an anti-SLAPP defense and Montana law doesn't.  Therefore, this factor doesn't apply.

*Sixth factor: Certainty, predictability, and uniformity of results.*  The Court in *Goguen* emphasized that, "where the tortious conduct occurred in one state and the injury occurs nationwide," the sixth factor favors applying the defense as defined by the speaker's state of domicile.  *Id.*  That approach, the Court explained, fostered "certainty and predictability for publishers," who would know at the time of publication what defenses would be available to them, rather than having those defenses be contingent on where publications were ultimately encountered.  *Id.* Again, the reasoning from *Goguen* favors applying the law of Montana, where Cohodes is domiciled.

*Seventh factor: Ease of determination and application.*  In *Goguen*, the seventh and final factor did not favor either state because, "Regardless of which state's law is applied, the [defense at issue could] be determined and applied without difficulty."  *Id.*  Not so here.  In this litigation, the seventh factor favors Montana

law because applying Georgia's anti-SLAPP statute would require this Court to wade into a raging debate about whether particular anti-SLAPP statutes can apply in federal court. *Compare, e.g.*, *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.) (anti-SLAPP statute couldn't apply in federal court), *with Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010) (anti-SLAPP statute could apply in federal court); *see also Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., joined by three other judges, dissenting from denial of rehearing en banc and arguing that federal courts may not apply state anti-SLAPP statutes). Indeed, ***the Eleventh Circuit has already held that, under the Erie Doctrine, Georgia's anti-SLAPP statute cannot be applied in federal court***. *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1356-57 (2018). Applying Montana's law to the anti-SLAPP question, by contrast, vastly simplifies the judicial task by allowing the Court to avoid the legal quagmire surrounding the application of anti-SLAPP statutes in federal court. Thus, the seventh factor from § 6 of the Restatement—like each of the other applicable factors—favors applying Montana law to the anti-SLAPP defense raised in Cohodes's motion.

Besides the § 6 factors, *Goguen* requires the Court to examine "the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." 415 Mont. at 373. The Restatement lists the most significant contacts as:

(a) The place where the injury occurred;

(b) The place where the conduct causing the injury occurred;

(c) The domicile, residence, nationality, place of incorporation, and place of business of the parties; and

(d) The place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145(2). In *Goguen*, the § 145 factors ultimately favored applying the defamation defense as defined by the law of the speaker's state of domicile. 415 Mont. at 374. Similarly here, the factors favor applying the anti-SLAPP law of Cohodes's state of domicile, Montana.

  ***First factor: Place of injury.*** The *Goguen* Court identified this factor as the only one supporting application of the law of the plaintiff's state of domicile. *Id.* In this case, too, this factor is the only one that favors applying Georgia law, since the principal place of injury is Georgia, where Holbrook is headquartered. *See* Restatement (Second) Conflict of Laws § 150(c). At the same time, due to Cohodes's tweets being broadcast globally, the injury is not confined to Georgia alone. That tempers the significance of this factor, as the *Goguen* Court suggested. *See* 415 Mont. at 374.

  ***Second factor: Place of the conduct causing the injury.*** In *Goguen*, the second § 145 factor favored applying the law of the speaker's state of domicile, because that's where the speaker was when it published the defamatory statements at issue in that case. *Id.* In this case, similarly, the second factor points

straightforwardly to applying Montana law.

**Third factor: Domicile of the parties.**  In *Goguen*, the Court held that the third factor—concerning the parties' domiciles—favored applying the law of New York, where the speaker was domiciled, "because the privilege [at issue in that case] protect[ed] the speaker, the conduct occurred in New York, and the speaker [was] located in New York." *Id.*  Taking the same approach, this factor favors applying Montana's law on anti-SLAPP defenses.

**Fourth factor: Center of the relationship.**  As in *Goguen*, the fourth factor does not favor either state's law "because there is no relationship between the parties aside from the publication[s] and lawsuit." *Id.*

Thus, two of the three relevant § 145 factors favor applying Montana's law to Cohodes's asserted anti-SLAPP defense.  Together with the fact that *every* applicable § 6 factor favors applying Montana law here, the proper result is clear: Just as the law of the speaker's state of domicile governed the asserted defense in *Goguen*, the law of Cohodes's state of domicile governs his asserted anti-SLAPP defense.

### B. Cohodes's Choice-of-Law Analysis Is Misguided.

In urging the opposite conclusion, Cohodes does not analyze, or even cite, *Goguen*.  Instead, he adopts a two-step approach that misapplies the relevant legal principles.  First, he asserts that, because Holbrook is headquartered in Georgia,

13

that's where Holbrook suffered the bulk of its injury, and that's the state whose law governs Holbrook's libel claims.  (Mot. at 6-7.)  Second, Cohodes assumes that, since Georgia law governs Holbrook's libel claims, it must also govern Cohodes's anti-SLAPP defense.  (*Id.* at 7.)

Regardless of whether the first step in Cohodes's argument is right, the second manifestly isn't.  It amounts to a version of *lex loci delicti*, a doctrine under which the law of the place where the injury occurred governs all choice-of-law issues arising in a case.  *See Phillips*, 298 Mont. at 443.  More than two decades ago, Montana's Supreme Court expressly rejected *lex loci delicti*, opting instead for the more flexible most-significant-relationship approach favored by the Restatement. *Id.* at 445.  And, under that approach, "the threshold defamation issue and the applicability of defenses are separate issues," to be analyzed separately and under different considerations.  *Goguen*, 415 Mont. at 369 (citing § 145 of the Restatement).

Attempting to smuggle *lex loci delicti* back into Montana law, Cohodes argues that his approach is required by § 150(3) of the Restatement.  (Mot. at 5-6.)  That argument fails for two reasons.  First, tellingly, the Montana Supreme Court never even mentioned § 150 in *Goguen*, a clear indication that Cohodes's attempt to make it the centerpiece of this Court's analysis is an invitation to error.  Second, § 150 itself declares that it merely states a presumption, one that yields whenever, "with

respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." Restatement (Second) Conflict of Laws § 150(1) & cmt. b. *Goguen* conclusively shows that the presumption yields in cases like this.

Fundamentally, the problem with Cohodes's motion is that he lacks any discernible connection to Georgia and Georgia lacks any interest in applying its anti-SLAPP statute to him—particularly to the detriment of a Georgia-based business that has been defamed by a Montanan. For all the foregoing reasons, Cohodes cannot avail himself of Georgia's anti-SLAPP statute, meaning his motion lacks a valid basis in law. It should be denied.

## II.    Even If Georgia's Anti-SLAPP Statute Applied, Cohodes's Motion Would Still Fail.

Where it does apply, Georgia's anti-SLAPP statute only justifies striking claims that lack "even minimal merit."[2] *Wilkes & McHugh, P.A. v. LTC Consulting, L.P.*, 306 Ga. 252, 262-63 (2019). Because Holbrook's claims readily surmount that low bar, this Court would have to deny Cohodes's motion even if the statute applied.

Cohodes's motion identifies just three bases for striking Holbrook's claims, all of them meritless.[3] First, he suggests that two of his tweets at issue are not "of

---

[2] All that's required, specifically, is that the plaintiff show the complaint is legally sufficient and supported by a prima facie showing of facts. *Boley v. A-1 Horton's Moving Serv., Inc.*, 373 Ga. App. 574, 578 (2024).

[3] Cohodes spends much of his brief contending that his tweets address a matter of public concern. (Mot. at 10-14.) For purposes of this opposition, Holbrook doesn't dispute that contention.

and concerning" Holbrook.   But the content and context of the tweets shows otherwise, as does Cohodes's own commentary on them.   Next, he contends that all three tweets at issue express nonactionable opinions.   Not only does that contention mistake factual assertions for opinions, but it ignores that purported opinions are actionably defamatory if, like Cohodes's tweets, they imply knowledge of undisclosed, defamatory facts.   Finally, Cohodes asserts that Holbrook has not carried its burden of showing he published the tweets with actual malice.   That argument overlooks the wealth of evidence of malice—direct and circumstantial— that Holbrook has already adduced, even without the benefit of discovery on that issue.

### A. Cohodes's February and August Tweets Were About Holbrook.

On February 29, 2024, Cohodes tweeted:



(Phillips Decl., Ex. 5.)  And on August 13, 2024, he tweeted:



(*Id.*, Ex. 3.)  In his motion to strike, Cohodes suggests those tweets are

nonactionable because they don't expressly refer to Holbrook by name.  (Mot. at

16.)

To be sure, a defamation plaintiff must show that at least some people familiar

with the plaintiff could reasonably have understood the defamatory publication to be

"of and concerning" the plaintiff.  *Smith v. Stewart*, 291 Ga. App. 86, 92 (2008).

There is no requirement, however, that the defamed plaintiff be identified by name,

and the plaintiff is entitled to point to the circumstances surrounding the publication.

*See Davis v. Macon Tel. Publ'g Co.*, 93 Ga. App. 633, 636 (1956).  Here, the

circumstances surrounding Cohodes's February and August tweets make clear that

a reasonable person could have—indeed, would have—understood those tweets to

refer to Holbrook, because they very obviously did.

Start with the August tweet, declaring "I am sure there is a kickback from

$RILY to him." Cohodes's argument to this Court—that this tweet does not necessarily refer to Holbrook—is perplexing, because Cohodes has previously admitted, proudly, that it does. When Holbrook sent Cohodes a pre-suit demand letter identifying this tweet in particular as defamatory, Cohodes responded by confirming that the tweet did refer to Holbrook, that it was published in the context of a "discussion of Holbrook's investment decisions," *and* that it was intended to convey to Cohodes's followers "that Holbrook is corrupt." (Phillips Decl., Ex. 8 at 5.)

Even if Cohodes were not on record admitting that the August tweet refers to Holbrook, the surrounding context makes clear that it does. The tweet *responded directly to another user's tweet that disparaged Holbrook's portfolio* and included the Twitter handle @scottycarm, which is that of Holbrook CEO Scott Carmack. (*Id.*, Ex. 3.) Moreover, Twitter followers responded to Cohodes's "kickback" tweet directed at Holbrook by further piling on Holbrook, demonstrating that they understood Cohodes's tweet exactly as he intended it. The Twitter account for Parrot Capital, for example, commented:

18



(Phillips Decl., Ex. 2.)  So not only **could** reasonable people understand the August tweet as being about Holbrook, but readers **actually did** understand it that way. That's potent evidence on the of-and-concerning element.  *See Miller v. Sawant*, 18 F.4th 328, 339 (9th Cir. 2021).

The same goes for Cohodes' February tweet, declaring "He is in on the fraud. betcha riley asset management owns his shit ass fund."  Like the August tweet, Cohodes's February tweet very clearly responded to a series of other tweets about Holbrook, alerting reasonable readers that Holbrook—and not just some unspecified "he"—was the subject of the February tweet.

19



(Phillips Decl., Ex. 4.)

The reference to "his shit ass fund" further confirms that the "he" mentioned in the tweet is Holbrook, since Holbrook owns and operates the fund Cohodes and other participants in the conversation were disparaging.  (*Id.*)  And here, too, Cohodes's Twitter followers replied to his tweet with statements describing Holbrook, making it clear Holbrook was the tweet's subject.



(Phillips Decl., Ex. 5.)

Cohodes's brief never addresses the context for his August and February tweets, nor does he explain why that context couldn't alert reasonable readers that the tweets referred to Holbrook. Instead, his sole contention is that those tweets weren't about Holbrook because they used the words "he" and "him," whereas Holbrook is an "it." (Mot. at 16.)

Defamation defendants have been making versions of that argument for centuries, and courts have been rejecting them for just as long. In *Martin County Bank v. Day*, for example, the defendant asserted that he hadn't defamed a corporation because his allegedly defamatory publication used the pronouns "he" and "his," which, he contended, "cannot apply to a corporation." 73 Minn. 195, 196 (1898). The court promptly dispensed with that contention, explaining that:

> While a corporation has in law an existence distinct from that of its
> stockholders or managing officers, yet, as it can only act through natural
> persons as its agents, its president or other managing agent often

> becomes so identified with it in the popular mind that we use his name
> when we mean the corporation acting through him.

*Id.* at 197.  The same reasoning applies here.  Under the circumstances, the "he" or "him" referred to in the tweets can only have meant someone acting on behalf of Holbrook and its funds.  Any other reading would have rendered the tweets nonsensical, especially in the context of online exchanges that were explicitly about Holbrook.  That, presumably, is why Cohodes never even suggests who else "he" and "him" might have referred to.  (Mot. at 16.)

Under Georgia law, "there is no requirement that the defamatory statement refer directly to the plaintiff"; all that matters is whether a person familiar with the plaintiff could fairly understand the statements, in their full context, to reflect on the plaintiff.  *Bell v. Johnson Publ'g Co.*, No. 7:16-cv-16, 2018 WL 357888, at *3 (M.D. Ga. Jan. 10, 2018).  Holbrook has more than met that standard here.

### B. Cohodes's Tweets Were Not Nonactionable Statements of Opinion.

Cohodes's next argument concerns the February and August tweets, as well as a third tweet, published on December 17, 2023, stating:



(Phillips Decl., Ex. 9.)  In his motion, Cohodes asserts that all three of those tweets—the February, August, and December ones—state nonactionable opinions.

Whether a statement is nonactionable opinion depends on whether a reasonable reader could conclude that the statement, viewed in its entirety and in context, expressly or impliedly conveys an assertion of fact capable of being proven false.  *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990); *Bryant v. Cox Enters., Inc.*, 311 Ga. App. 230, 234-35 (2011).  Because all three of the tweets underlying this

23

litigation expressly or impliedly conveyed an assertion of fact capable of being proven false, none of them is nonactionable opinion.

### 1. The August "kickback" tweet.

Begin with Cohodes's August tweet declaring, "I am sure there is a kickback from $RILY to him." According to Cohodes, that tweet expresses a nonactionable opinion because Cohodes was "simply making his best guess or his opinion in this post." (Mot. at 16.) Of course, the tweet does not state that Cohodes was merely guessing or opining. Just the opposite, it asserts he is "sure there is a kickback." Cohodes may wish, now, that he had qualified or softened that language, but he didn't do that when he published the tweet. A statement's lack of qualifying or softening language often suggests the statement asserts facts, not opinions. *E.g.*, *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1356 (N.D. Ga. 2020).

Even if Cohodes intended his August tweet as a statement of opinion, moreover, that's irrelevant because whether a statement is protected opinion depends not on the speaker's intent, but on whether a reasonable reader would interpret it to convey a provably false assertion. *See Bellemead, LLC v. Stoker*, 280 Ga. 635, 638 (2006); *Jaillett v. Georgia Television Co.*, 238 Ga. App. 885, 890 (1999); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 697 (11th Cir. 2016). Cohodes's August tweet expressly and unequivocally conveys to readers that Holbrook is taking illicit

24

kickbacks from another company—much as a flyer saying "I am sure there's cyanide in those hamburgers" ineluctably conveys that the burgers are, in fact, toxic. Because Cohodes's unadorned assertion in the August tweet is capable of being proven false, it constitutes an actionable statement of fact, not mere opinion.

Say, though, that Cohodes's August tweet is read—generously and counterfactually—to say something more measured, like "*In my opinion*, there is a kickback to Holbrook." That tweet, too, would be actionable. That's because there is no "wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich*, 497 U.S. at 18; *Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (2009). Rather, a statement couched in the language of opinion is still actionable if "it implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Monge v. Madison Cnty. Records, Inc.*, 802 F. Supp. 2d 1327, 1335 (N.D. Ga. 2011) (citing *Jaillett*, 238 Ga. App. at 890); *see also Bryant*, 311 Ga. App. at 234-35 (citing *Gast v. Brittan*, 277 Ga. 340, 341 (2003)). So even if Cohodes's August tweet were somehow read as expressing a mere suspicion, as Cohodes now urges, it would still be actionable because it would clearly imply that Cohodes knows undisclosed, defamatory facts about Holbrook that form the basis for his suspicion. However Cohodes's August tweet is parsed, it's actionable.

### 2. The February "fraud" tweet.

The same goes for Cohodes's February tweet charging, "He is in on the Fraud.

betcha riley asset management owns his shit ass fund." According to Cohodes, that tweet is "just his opinion" because he was expressly "talking about what he 'bets' to be the truth." (Mot. at 16.) But that argument has several holes.

Most obviously, it completely ignores the tweet's first sentence, which alleges, unequivocally, that Holbrook "is in on the Fraud." Nothing in that allegation refers to what Cohodes "bets" to be the truth. Rather, the tweet's first sentence straightforwardly accuses Holbrook of fraud. And, as one court after another has confirmed, that type of accusation is an actionable assertion of fact, not an opinion. *E.g.*, *StopLoss Specialists, LLC v. VeriClaim, Inc.*, 340 F. Supp. 3d 1334, 1351-52 (N.D. Ga. 2018) ("appears to be insurance fraud" was libelous per se).

Cohodes emphasizes that the tweet's second sentence uses the word "betcha." But nothing in that sentence qualifies or caveats the factual assertion in the first sentence. Instead, the second sentence makes a separate assertion—that Cohodes suspects B. Riley owns Holbrook's fund. Even if that particular assertion were characterized as nonactionable opinion, it wouldn't transform the tweet's first sentence into an expression of opinion, because a speaker's act of adding nonactionable opinion alongside a false factual assertion does not render the factual assertion nonactionable—at least so long as the publication, taken as a whole, can be interpreted as conveying facts. *See Gettner v. Fitzgerald*, 297 Ga. App. 258, 261 (2009) (quoting *Gast*, 277 Ga. at 341).

The biggest problem with Cohodes's argument about his February tweet, though, is that it rests on a false premise. Contra Cohodes, a statement is not transformed into nonactionable opinion just because it describes what the speaker "bets to be the truth." *E.g.*, *Van Liew v. Eliopoulos*, 92 Mass. App. Ct. 114, 124 n.21 (2017) (statement beginning "it's a very good bet" was actionably defamatory). As the U.S. Supreme Court has explained:

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar."

*Milkovich*, 497 U.S. at 18-19.

That passage disposes of Cohodes's argument about the word "betcha," which is simply a variation of "in my opinion." Just as a reasonable person could understand the statement "In my opinion John Jones is a liar" to imply knowledge of undisclosed facts showing that Jones told an untruth, so too could a reasonable person understand the statement "betcha riley asset management owns his shitass fund" to imply knowledge of undisclosed fact showing an illicit business relationship between B. Riley and Holbrook. The word "betcha" does not remove the second sentence's defamatory implication. For that reason, too, the February

27

tweet is actionable in its entirety.

### 3.  The December "non Investment Grade Securities" tweet.

Cohodes's December tweet asserts: "I think I will write a letter about @HolbrookHldgs to the @SECGov about hold non Investment Grade Securities." Here, again, Cohodes argues that his tweet—charging Holbrook with unlawfully holding non-investment-grade securities—expresses a nonactionable opinion because he was simply "voicing his thought that he might write a letter to the SEC about Holbrook."  (Mot. at 16.)

Again, though, that argument lacks a basis in law.  There's no "voicing one's thoughts" exception to defamation.  Just the opposite, the U.S. Supreme Court has explained that "[it] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'"  *Milkovich*, 497 U.S. at 19 (quoting *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (Friendly, J.)).  Thus, a defamatory allegation couched as the speaker's musings about writing a letter does not cease to be a defamatory allegation.  The charge "John is a murderer" is just as defamatory when reframed as "I think I will write a letter to the police about John having murdered people."  The preface about writing a letter does not change the statement's factual import.

Cohodes is simply wrong, therefore, that his December tweet—or any of the

tweets underlying this lawsuit—expresses nonactionable opinion.

### C. Holbrook Has Sufficiently Pled Actual Malice.

In his brief, Cohodes never even tries arguing that his accusations about Holbrook were true. Instead, he asserts—without elaboration—that "Holbrook has no evidence that [he] has acted with malice." Again, he's mistaken.

Proof that a speaker fabricated a defamatory allegation is powerful evidence of actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Here, Holbrook has such proof—from Cohodes himself, no less. During an interview on October 8, 2024—***after*** he published the tweets at issue—Cohodes was asked about his feud with Holbrook, and he confessed, "I don't even know who Holbrook is or what they do." (Phillips Decl. ¶ 5.) All he knew about Holbrook, he continued, was that they'd dared to "pick a fight" with him, which had led him to try to "end the fight" by "skat[ing] them into the concrete." (*Id.*) In other words, Cohodes admitted that he knew nothing about Holbrook, that he lacked any factual basis for making any assertions about Holbrook—let alone that they were engaged in fraud—and that his allegations were born of pure vindictive, retaliatory rage.

Cohodes's admission that he lacked any actual knowledge about Holbrook or its operations is independently sufficient to create a jury question on actual malice. *See St. Amant*, 390 U.S. at 732; *see also Brown v. Gill*, 792 Fed. App'x 716, 722 (11th Cir. 2019) (evidence of fabrication established jury question about actual

malice); *Carson v. Allied News Co.*, 529 F.2d 206, 213 (7th Cir. 1976) (same). But it's far from the only evidence of actual malice in this litigation. For instance, evidence concerning animosity and ill will supports a finding of actual malice, particularly when it bears on the speaker's motive for publishing statements. *See Harte-Hanks Commc'ns, Inc v. Connaughton*, 491 U.S. 657, 669 (1989); *Celle v. Filipino Rep. Enters.*, 209 F.3d 163, 183, 186, 189 (2d Cir. 2000). Similarly, actual malice can be inferred from "the nature and circumstances of the alleged defamation." *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015). Here, Cohodes has admitted that he defamed Holbrook because he was furious with them, so that he intended to "skate them into the concrete." (Compl. ¶ 78.) His profanity-laced tweets responding to Holbrook's criticism of him only underscore that Cohodes's goal was not to tell the truth, but to "end the fight" with Holbrook by destroying its reputation. (*Id.*; Dkt. 1-1 at 2; Dkt. 1-2 at 2.) That animus is circumstantial evidence of actual malice because Cohodes admits it motivated his defamatory tweets.

A defendant's refusal to retract false statements—especially after being confronted with evidence showing the statements' falsity—is also circumstantial evidence of malice. *See Schafer v. Time, Inc.*, 142 F.3d 1361, 1370 n.8 (11th Cir. 1998); *Morgan v. Dun & Bradstreet, Inc.*, 421 F.2d 1241, 1243 (5th Cir. 1970). It is significant, therefore, that Cohodes still hasn't publicly retracted and apologized for his false and defamatory statements, despite the fact that they remain entirely

unsupported and, in some cases, affirmatively contradicted. Cohodes knows, for example, that his allegations of a kickback scheme between Holbrook and B. Riley are false because he knows Holbrook has no selling agreement with B. Riley that would allow B. Riley's financial advisors to recommend or sell Holbrook's funds to B. Riley's clients. (Compl. ¶ 66; Phillips Decl., Ex. 7.) Yet Cohodes has not retracted or publicly apologized for accusing Holbrook of participating in a kickback scheme. (Phillips Decl., Ex. 8). That is yet more circumstantial evidence of malice.

Courts routinely hold that even less evidence suffices to ***prove actual malice at trial***, let alone to advance past an anti-SLAPP motion at the pleading stage. In *Curtis Publishing Co. v. Butts*, for example, the U.S. Supreme Court upheld a verdict finding actual malice because the plaintiff had shown (1) that there was reason to question an informant's veracity and a source's account, and (2) that the defendant did not solicit and review information that could have presented facts contradicting the defendant's narrative. *See* 338 U.S. 130, 157 (1967); *see also, e.g.*, *Posadas v. City of Reno*, 851 P.2d 438, 455 (Nev. 1993) (derogatory press release "combined with evidence suggesting ill will" sufficient to create jury question on actual malice); *Kuhn v. Tribune-Republican Publ'g Co.*, 637 P.2d 315, 318 (Colo. 1981) (en banc) (affirming jury verdict of actual malice against reporter where reported admitted that he had no basis for most of his erroneous statements, even though he had taken time to verify parts of them).

31

Because Holbrook's actual-malice case is so strong—even at this pre-discovery stage—the Court should reject Cohodes's argument for dismissal on actual-malice grounds.  If, however, the Court is inclined to consider granting Cohodes's motion on actual-malice grounds, the Court should first grant Holbrook discovery on the actual-malice issue.  Georgia's anti-SLAPP statute expressly compels discovery on the actual-malice issue, OCGA § 9-11-11.1(b)(2) & (d), and Georgia's courts have deemed it reversible error to deny such discovery where actual malice is in question, *Equity Prime Mortg., LLC v. Greene for Congress, Inc.*, 373 Ga. App. 441, 452 (2024).

## **<u>CONCLUSION</u>**

The Court should deny Cohodes's motion and require him to file an answer within 21 days.

Dated: March 21, 2025

<div style="margin-left:40%">

*/s/ Matthew J. Kelly*
Matthew J. Kelly
TARLOW STONECIPHER WEAMER
& KELLY, PLLC
1705 West College Street
Bozeman, MT 59715
(406) 586-9714
mkelly@lawmt.com

Andrew C. Phillips (*Pro Hac Vice*)
Mark Thomson (*Pro Hac Vice Pending*)
Shannon B. Timmann (*Pro Hac Vice*)
Hannah Menchel (*Pro Hac Vice*)

</div>

MEIER WATKINS PHILLIPS PUSCH LLP
919 18th Street NW, Suite 650
Washington, DC 20006
(202) 318-3655
andy.phillips@mwpp.com
mark.thomson@mwpp.com
shannon.timmann@mwpp.com
hannah.menchel@mwpp.com

*Counsel for Plaintiff Holbrook Holdings, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on March 21, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

<div align="right">

*/s/ Matthew J. Kelly*
Matthew J. Kelly

</div>

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the foregoing document was prepared using Times New Roman 14-point typeface, contains 6,453 words, which is under the 6,500 word page maximum count pursuant to Local Rule 7.1(d)(2)(E). This certificate was prepared in reliance on the word-count function of Microsoft Word.

*/s/ Matthew J. Kelly*
Matthew J. Kelly