Calvin J. Stacey
Morgan M. Sorena
STACEY & FUNYAK
P.O. Box 1139
Billings, MT 59103-1139
Phone: (406)259-4545
cstacey@staceyfunyak.com
msorena@staceyfunyak.com

ATTORNEYS FOR DEFENDANT

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

_____

| | | |
|---|---|---|
| HOLBROOK HOLDINGS, INC. | ) | CAUSE NO.: CV-24-175-BU-JTJ |
| | ) | |
| Plaintiff, | ) | Judge John Johnston |
| | ) | |
| v. | ) | **DEFENDANT MARC COHODES'** |
| | ) | **REPLY BRIEF IN SUPPORT OF SPECIAL** |
| MARC COHODES, | ) | **MOTION TO STRIKE/ANTI-SLAPP** |
| | ) | **MOTION PURSUANT TO O.C.G.A.,** |
| Defendant. | ) | **§ 9-11-11.1** |

_____

Defendant Marc Cohodes ("Cohodes"), by and through his counsel of record, hereby submits this Reply Brief in Support of his Motion filed pursuant to O.C.G.A., § 9-11-11.1, Georgia's "Anti-SLAPP" statute.

**A. Georgia Substantive Law Applies.**

Given the conflict between Georgia and Montana law in this matter, the Court must consider the principles outlined in § 6(2) of the Restatement. *Buckles v. BH*

1

*Flowtest, Inc.*, 2020 MT 291, ¶ 10, 402 Mont. 145, 476 P.3d 422 (citing *Phillips v. GMC*, 2000 MT 55, ¶ 23, 298 Mont. 438, 995 P.2d 1002). The § 6 factors are less important in tort law but nevertheless are analyzed below and support application of Georgia law here.

### a. § 6 First Factor: Needs of Interstate and International Systems

This factor supports application of Georgia law as it has the most significant relationship to the issue. Holbrook's argument reads the purpose of Georgia's anti-SLAPP statute too narrowly. Nothing in O.C.G.A. § 9-11-11.1(a) limits the scope of the statute only to citizens of Georgia. There are no words of limitation and it does not state that citizens of other states cannot receive the benefits of the anti-SLAPP statute if it otherwise applies.

Georgia's anti-SLAPP statute's intent is to protect the speaker and encourage the exercise of constitutionally protected free speech and applying it here would respect the policy interest and substantive law on the issue of exercising free speech under the Constitution against a company doing business in Georgia, affecting Georgia citizens, in connection with an issue of public interest or concern. *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 6, 561 S.E.2d 431 (2002); *Adventure Outdoors, Inc. v. Bloomberg*, 307 Ga. App. 356, 359, 705 S.E.2d 241, 244–45 (2010).

In *Adventures Outdoors*, the court concluded non-Georgia citizens were

entitled to protection of Georgia's anti-SLAPP statute, as the purpose is generally "to encourage the exercise of constitutionally protected free speech" and to "protect a person from lawsuits that are initiated in response to such protected statements." *Adventures Outdoors*, 307 Ga. App. at 359-60. Therefore, Holbrook's argument that Georgia's anti-SLAPP statute applies only to citizens of Georgia ignores the purpose of the statute.

### b. § 6 Second and Third Factors: Relevant Policies and Interest of the Forum State and Other Interested States.

These factors favor Georgia law. These factors address whether applying the law of a state would further the intended purpose of that law, again coming back to which state has the most significant interest. Restatement (Second) of Conflicts of Laws, § 145(1); *Goguen*, 2024 MT ¶ 25, citing *Phillips*, ¶ 37. As discussed above, Georgia's anti-SLAPP statute *broadly* applies to any claim asserted against a person or entity arising from an act which could reasonably be construed as an act in furtherance of the right of free speech in connection with an issue of public interest or concern. The broadness shows that its purpose and legislative intent is to protect an individual like Cohodes speaking out against a Georgia based company.

Not only was Cohodes' speech protected under the Constitution and directed towards a Georgia company, his speech has allegedly affected Georgia's economy due to Holbrook having its principal place of business in Georgia. His statements

3

were published on the internet where anyone in the world could see (not just people in Montana), to "his many thousands of followers on X", and have allegedly made an impact on Holbrook, a company with its principal place of business in Georgia, allegedly impacting Georgia where the business operates. Holbrook itself alleges in its Complaint that Cohodes' actions have caused "enormous harm to Holbrook and its business and reputation" which affirms the significant relationship Georgia has with this action. *See e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (holding that although the conduct occurred in cyberspace, the injury to the company occurred in the state of its principal place of business); *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993).

### c. § 6 Fourth Factor: Protected Justified Expectations

Despite Holbrook's argument otherwise and reliance on *Goguen*, this factor favors application of Georgia law. Holbrook's Complaint and Opposition discusses how Cohodes is sophisticated and "well-known," detailing all of Cohodes' involvement with finances, litigation, and his "natural penchant for flinging grotesque insults and accusations" over the course of his life. *See e.g.* Complaint, Doc. 1, ¶¶ 16, 27-48. Holbrook cannot devote pages of its Complaint discussing the sophistication of Cohodes and at the same time argue that Cohodes had no reasonable expectation that Georgia law would apply to a claim by Holbrook. It

was reasonable to anticipate the application of Georgia law in this matter as Holbrook admits through many allegations that Cohodes is a sophisticated party.

### d. § 6 Fifth Factor: Basic Policy Underlying the Law of the Issue.

This fifth factor is inapplicable. *Goguen*, ¶ 29.

### e. § 6 Sixth Factor: Certainty, Predictability, Uniformity

This sixth factor favors application of Georgia law. Although Cohodes is a resident of Montana, his statements were published on the internet. The conduct at issue in this case is different than in *Goguen* where the defendant was a New York newspaper publishing stories about the plaintiff in New York. Here, Cohodes may reside in Montana but his statements were made internationally and centered around alleged activities taking place in Georgia by a Georgia resident who alleges to have suffered injuries in Georgia. *See Reeves v. American Broadcasting Cos.*, 5802 F. Supp. 84, 90 (holding that even though the defendants were residents of New York and the alleged defamatory report was broadcast nationwide from Washington D.C., California law applied because the plaintiff was a resident of California, plaintiff suffered injuries in California, and the report was centered on activities in California).

### f. § 6 Seventh Factor: Ease of Determination and Application.

The final factor favors Georgia law as well. Holbrook argues that because

the Eleventh Circuit has held that Georgia's anti-SLAPP statute cannot be applied in federal court, Montana law must be applied. This is not so. The Ninth Circuit and its district courts regularly apply state anti-SLAPP statutes, like California's, in federal court. Georgia's anti-SLAPP statute is expressly modeled after California's. It is also irrelevant that the Eleventh Circuit has declined to apply Georgia's anti-SLAPP statute in federal court, as the Ninth Circuit has expressly criticized the Eleventh Circuit's decision. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022).

After examining and applying the § 6 factors, it is clear that Georgia has the most significant relationship to the issues.

The factors under § 145 of the Restatement must also be considered, as these specifically apply to a tort action such as this. *Buckles*, ¶ 12; *Phillips*, ¶ 29; *Goguen*, ¶ 33. There is a refutable presumption that unless another state has a "more significant relationship," the law of the state where the injury occurred will control. Restatement (Second) on Conflicts of Laws, § 145.

### g. § 145 First Factor: Place of Injury

The first factor favors application of Georgia law and Georgia's anti-SLAPP statute. The place of injury is Georgia, especially in light of Holbrook's allegation that it has suffered enormous harm to its business and reputation in Georgia. As

noted above, there is a refutable presumption that the law of the state where the injury occurred will control. This factor most certainly favors application of Georgia law and Holbrook cannot refute this presumption.

### h. § 145 Second Factor: Place of Conduct Causing Injury

This second factor does not favor either Georgia or Montana law. Holbrook has failed to present any evidence to show that this factor somehow favors Montana law. Although Cohodes is a Montana resident, this does not mean that he was in Montana when he posted his statements on the internet. Holbrook has not offered any evidence that Cohodes posted any of his statements from Montana. It is undisputed, though, that he did not post them in a Montana newspaper or journal like was at issue in *Goguen*. His statements were not part of a publication created in Montana. Cohodes made statements about Holbrook, a Georgia company, on the internet from wherever he was in the world at the time. This factor does not favor either state's law, as there is no evidence that Cohodes' conduct occurred in Montana.

### i. § 145 Third Factor: Domicile of Parties

This factor favors application of Georgia law. Holbrook, the alleged injured party seeking damages, has its principal place of business in Georgia. As the plaintiff with its principal place of business in Georgia and its injuries allegedly

7

occurring in Georgia, this factor inherently favors application of Georgia law. *See, e.g. Winter v. Pioneer Drilling Servs.*, 2015 U.S. Dist. LEXIS 175256, at *5 (D. Mont. May 14, 2015) (holding, in part, that because the plaintiff's injuries occurred in North Dakota, North Dakota law was favored even though the defendant was a resident of Montana). Further, Georgia law seeks to protect citizens who speak out on issues of public concern and importance and Holbrook concedes Cohodes' statements related to matters of public concern. Georgia has a significant interest in protecting speech that is about and impacts a Georgia company. Georgia enacted its anti-SLAPP statute to encourage individuals to speak out and exercise their freedom of speech against Georgia companies without fear of being stifled or silenced. Holbrook having its principal place of business in Georgia further supports application of Georgia law.

### j. § 145 Fourth Factor: Center of Relationship

This factor, the center of the parties' relationship, does not factor either state's law because there is no direct relationship between Cohodes and Holbrook.

In short, Georgia has the most significant relationship to this litigation. It enacted the anti-SLAPP statute to protect free speech. Now, a business with its principal place of business in Georgia seeks to silence Cohodes who has voiced statements about that business which are a matter of public concern. When one of

its own businesses tries to silence free speech, it cannot truly be argued that Georgia should not apply its own law when the purpose of the law is to prohibit this exact scenario from unfolding.

Further, Holbrook's alleged injuries occurred in Georgia, creating a presumption that Georgia law applies. After analysis of all factors and contacts pursuant to the Restatement, it is clear Georgia has the most significant relationship to this litigation and Georgia law must apply.

### B. Holbrook's Claims Must Be Stricken Pursuant to O.C.G.A. § 9-11-11.1

Importantly, Holbrook concedes the statements made by Cohodes at issue in this litigation are matters of public concern so the first step of the analysis has been met by Cohodes.

The second step of the anti-SLAPP analysis requires a determination of whether Holbrook has established that there is a probability it will prevail on its claims against Cohodes. It has not. Holbrook has not even contended in its Opposition that the statements made by Cohodes that are at issue in this litigation are false – only that they *could* be proven to be false.

Putting aside the lack of any actual argument by Holbrook that the statements made by Cohodes are false, Holbrook still fails to meet its burden to demonstrate that there is a probability it will prevail on its claims at trial. O.C.G.A. § 9-11-11.1.

9

Holbrook's Complaint against Cohodes alleges three claims for libel per se, each based on one X post. There are only three statements at issue in this litigation, and Holbrook has the burden of proving that it is likely to prevail on its libel per se claim on each one. It cannot do so, and the anti-SLAPP motion must be granted.

"The expression of opinion on matters about which reasonable people might differ is not libelous." *Davis v. Sherwin-Williams Co.*, 242 Ga. App. 907 (531 SE2d 764) (2000). *Rosser v. Clyatt*, 348 Ga. App. 40 (2018) is on point here. In *Rosser*, the plaintiff brought a defamation action against a number of individuals who had written statements about him such as:

- "Tommy Rosser had no idea that the fraud and corruption would be uncovered";
- "This is a conspiracy by the Rossers and some of the board members to benefit themselves with the funds and assets of the Gracy EMC and its membership";
- "For over 70 years the past and present board members and three generations of Rossers have allowed corruption and unethical practices to take place at the Grady EMC";
- "Did the board and the Rossers receive kickbacks from vendors?";

*Rosser* at 46-47. The Georgia trial court ruled that many of the statements were non-actional opinions, such as "Tommy Rosser had no idea that the fraud and

10

corruption would be uncovered." *Id*. at 47. The trial court further reasoned that it was apparent the statements were used "only to express [their] subjective opinion criticizing" Rosser and that the average reader would not have construed the statements to be legal conclusions that Rosser had committed the crimes, but rather that they were subjective, hyperbolic opinions that concern a matter on which reasonable people might differ. *Id*.

The same is true here. Holbrook itself has devoted large portions of its Complaint and its Opposition describing Cohodes as a short seller who has a "flair for self-promotion" and who levies "attacks and criticism" on his target companies and its management. By Holbrook's own description of Cohodes, it stands to reason that all of Cohodes' statements were used only to express his subjective opinion criticizing Holbrook and its management, and most importantly, the average reader would not have construed Cohodes' comments to be legal conclusions but rather his subjective, hyperbolic opinions consistent with how he speaks about companies.

### *December 17, 2023 X Post*

The December 17, 2023 post is a statement of opinion. It is also unclear what, exactly, Holbrook contends is defamatory about this statement or what Holbrook contends is the false fact. It is not defamatory to state you think a

11

company may be holding non-investment grade securities and that you may write a letter about it.   Holbrook relies solely on *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) to support its contention that this post is somehow defamatory.   *Milkovich*, though, is distinguishable, as the statements at issue in *Milkovich* directly accused the plaintiff of committing the crime of perjury.   *Id*. at 6-8.   In this case, Cohodes' December 17, 2023 post was put on X and included other language like "I wonder if this guy is one of Parker Petite's illegit kids?"   This type of language included in the post on X shows that Cohodes was not asserting anything to be factual, and Holbrook cannot establish it is likely to show otherwise.

### *February 29, 2024 X Post*

This second post is also clearly an opinion.   This post read "He is in on the fraud.  betcha riley assert management owns his shit ass fund."   Again, like in *Rosser*, this type of post is clearly Cohodes' opinion – that Cohodes thinks Holbrook could be in on a scheme with B. Riley and that B. Riley might own Holbrook's "shit ass fund."   A reasonable reader would not think Cohodes, who Holbrook admits has a "flair for self-promotion" and "a reputation for pugnacity", is stating for a fact that Holbrook has committed fraud.   Holbrook's argument otherwise ignores the reasonableness of readers.

### *August 13, 2024 X Post*

Finally, the third and final post cannot be reasonably construed as a fact statement, especially in light of *Rosser*. Cohodes, in his self-promoting flair, contends that he is sure Holbrook has a kickback from B. Riley. The average and reasonable reader would not believe that Holbrook, a fund with "$1 billion in AUM" on behalf of clients, is receiving kickbacks without the SEC or some other governmental entity pursuing it or investigating it just because Cohodes wrote a post on X. Cohodes did not write or publish this statement as a fact – he published it as his opinion. And again, Holbrook has not offered any evidence that the statement is false or that Cohodes knew it was false when he posted it. The post simply conveys Cohodes' opinion.

### C. Holbrook Has Not Pled Or Shown Actual Malice As a Public Figure

Despite its argument that mere ill will can establish the sufficiency of pleading actual malice, Holbrook ignores that it is a public figure and in order to recover for defamation there must be proof by clear and convincing evidence of actual malice on the part of the defendant. *Rosser* at 50; *Ladner v. New World Communs. of Atlanta*, 343 Ga. App. 449, 452 (2017). To determine whether a plaintiff is a limited public figure, a court must isolate the public controversy, examine the plaintiff's involvement in the controversy, and determine whether the alleged defamation was

13

germane to the plaintiff's participation in the controversy. *Cottrell v. Smith*, 299 Ga. 517, 525 (2016).

A public controversy must exist in the public arena before the alleged defamation. *Ladner* at 453. Holbrook alleges that the public controversy between it, B. Riley, and Cohodes began on X on or around November 2023, before the first alleged defamatory statement. Complaint, ¶ 54.

A plaintiff in a libel case must be deemed a public figure if he purposefully tries to influence the outcome of a public controversy or, because of his position in the controversy, could realistically be expected to have an impact on its resolution. *Rosser* at 49. Here, Holbrook admits it involved itself in this controversy by publishing a tweet on Holbrook's X account being critical of Cohodes' conduct which was so publicly viewed that "within 48 hours" Holbrook was "immediately inundated" with messages from Cohodes' "army of supporters." *See* Complaint, Doc. 1, ¶ 55, 56. Holbrook is a public figure in this matter. *See Finkelstein v. Albany Herald Publishing Co.*, 195 Ga. App. 95, 97 (1990).

An alleged defamatory publication is "germane to a plaintiff's participation in a controversy if it might help the public decide how much credence should be given to the plaintiff." *Jones v. Albany Herald Publishing Co.*, 290 Ga. App. 126, 131 (2008). As Holbrook states it is the "best flexible income fund in the U.S."

14

(Complaint, ¶ 25), statements made about it and B. Riley online made Holbrook germane to the controversy.

A public figure proves actual malice by showing by clear and convincing evidence that the person who made the defamatory falsehood did so "with knowledge of its falsity or with reckless disregard for the truth." *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 52 (1976) (punctuation omitted); *see also Evans v. Sandersville Georgian*, 296 Ga. App. 666, 668 (2009).

Holbrook offers no evidence that Cohodes' statements are false, let alone that Cohodes knew any of his statements were false. Holbrook certainly has not shown that it is likely to prevail on the merits which includes showing that it will be capable of proving by clear and convincing evidence that Cohodes published his statements with actual malice.

### D. CONCLUSION

In light of the foregoing reasons, Cohodes' respectfully requests this Court issue an Order applying Georgia law, granting Cohodes' motion to strike, and ordering Holbrook to pay all reasonable attorney's fees and costs incurred in connection with this motion.

DATED this 21st day of April, 2025.

                                      STACEY & FUNYAK

                        By:  /s/Morgan M. Sorena
                              Morgan M. Sorena
                              Calvin J. Stacey
                              Stacey & Funyak
                              100 N. 27th Street, Suite 700
                              Billings, MT   59101
                              cstacey@staceyfunyak.com
                              msorena@staceyfunyak.com

                              *Counsel for Defendant Marc Cohodes*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 7.1(d)(2)(E) of Montana Federal Local Rules of Procedure, I certify that the foregoing document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word 2016 is <u>3,247</u> excluding caption, certificate of compliance and certificate of service.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2025, a copy of the foregoing ***Defendant Marc Cohodes' Reply Brief in Support of Special Motion to Strike/Anti-SLAPP Motion Pursuant to O.C.G.A. § 9-11-11.1*** was served upon the following counsel of record by the following means:

| | |
|---|---|
| <u>  1,2,3  </u> | CM/ECF |
| <u>       </u> | Hand Delivery |
| <u>       </u> | U.S. Mail |

1. Clerk of Court

2. Matthew J. Kelly
   Tarlow Stonecipher Weamer & Kelly, PLLC
   1705 West College Street
   Bozeman, MT   59715
   mkelly@lawmt.com

3. Andrew C. Phillips (*Pro Hac Vice*)
   Shannon B. Timmann (*Pro Hac Vice*)
   Hannah Menchel (*Pro Hac Vice*)
   MEIER WATKINS PHILLIPS PUSCH LLP
   919 18th Street NW, Suite 650
   Washington, DC 20006
   Email: andy.phillips@mwpp.com
   Email: shannon.timmann@mwpp.com
   Email: hannah.menchel@mwpp.com

By:   /s/Morgan M. Sorena