IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HOLBROOK HOLDINGS, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MARC COHODES,<br><br>　　　　Defendant. | CV 24–175–BU–DLC<br><br><br>ORDER |

    Before the Court is Defendant Marc Cohodes's motion to strike/anti-SLAPP motion. (Doc. 18.) For the reasons herein, the motion is DENIED.

## BACKGROUND

    Plaintiff Holbrook Holdings, Inc. ("Holbrook") is a financial advisory firm that is incorporated in Oregon and has its principal place of business in Atlanta, Georgia. (Doc. 1 ¶ 15.) Defendant Marc Cohodes is a citizen of the State of Montana and resides in Bozeman, Montana. (*Id.*)

    In November 2024, Holbrook filed this diversity action alleging that Cohodes committed libel through a series of posts on X, formerly known as Twitter. (*Id.* ¶¶ 84–116.) Holbrook alleges that it is "an award-winning financial advisory firm" with a goal of providing "potential high risk-adjusted returns for clients" through two funds. (*Id.* ¶¶ 1, 21–22.) One of the funds holds B. Riley

1

corporate bonds. (*Id.* ¶ 6.) B. Riley—a publicly traded company on NASDAQ—had done business with an individual referred to as "Conspirator #2" in a federal securities fraud indictment. (*Id.* ¶ 53.)

According to the Complaint, Cohodes is a short seller. (*Id.* ¶ 2.) Cohodes "bets against the stock prices of companies that he shorts, with the hope that he will earn profits if the company's stock price goes down." (*Id.*) Cohodes's followers believe Cohodes is proficient in identifying companies that are engaging in fraudulent or illegal activity; therefore, "when he takes a short position and begins targeting a company, he commonly claims to have determined that the company is corrupt and run by criminals." (*Id.* ¶ 3.)

In Fall 2023, Cohodes announced on X that he had a short position in B. Riley stock. (*Id.* ¶ 5.) Around the same time, Cohodes began publicly accusing B. Riley and its management of corruption and fraud. (*Id.*) In response to the accusations, Holbrook's CEO, Scott Carmack, published a tweet which was "mildly critical" of Cohodes. (*Id.* ¶ 7.) Cohodes responded on X by calling Carmack an "asshat" and calling Holbrook's mutual fund a "bag of shit." (*Id.* ¶ 9.) Cohodes published additional tweets accusing Holbrook and its principals of engaging in securities fraud and an unlawful "kickback" scheme with B. Riley. (*Id.* ¶ 11.) Cohodes repeated these allegations on social media over the course of nearly a year. (*Id.*)

2

Based on these allegations, Holbrook asserts three claims of libel per se. First, Holbrook alleges libel per se for Cohodes's December 17, 2023 post on X, in which he tweeted:

> He also has a problem with $BW I think I will write a letter about @HolbrookHldgs to the @SECGov about hold non Investment Grade Securities.. I also wonder if the @RILY clients on his Shit Ass Mutual Fund.. Friends dont Let Friends own $HOBIX.. Good to see another $RILY victim on TILT on a Sunday @FriendlyBearSA @AureliusValue @joe_bananas9.. I wonder if this guy is one of Parker Petite's illegit kids?

(*Id.* ¶¶ 61, 86.) Next, Holbrook alleges libel per se for Cohodes's February 29, 2024 X post, in which Cohodes tweeted: "He is on the fraud. betcha riley asset management owns his shit ass fund," allegedly referring to Holbrook. (*Id.* ¶¶ 68, 97.) Finally, Holbrook alleges a third claim of libel per se for Cohodes's August 13, 2024 X post in which he tweeted "I am sure there is a kickback from $RILY to him." (*Id.* ¶¶ 71, 108.) Holbrook asserts that through this post, Cohodes claims that Holbrook and B. Riley were engaged in an unlawful "kickback scheme." (*Id.* ¶ 72.)

Cohodes filed the present motion to strike Holbrook's Complaint, arguing that his speech is protected by Georgia's anti-SLAPP statute.[1] (Doc.

---

[1] The acronym "SLAPP" stands for "Strategic Lawsuit Against Public Participation." *Gopher Media LLC v. Melone*, 154 F.4th 696 n.1 (9th Cir. 2025). Georgia's "anti-SLAPP statute applies to claims brought against 'a person or entity arising from any act . . . which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the

18.) Holbrook opposes the motion. (Doc. 28.) Holbrook contends that Georgia's anti-SLAPP statute is irrelevant because under Montana's choice of law rules, the Court must apply Montana law.[2] (*Id.* at 11.) Holbrook further argues that even if Georgia law applies, Cohodes's motion would still fail because Cohodes's tweets were not nonactionable statements of opinion and Holbrook sufficiently pled actual malice. (*Id.* at 28–38.)

## DISCUSSION

"[A] federal court sitting in diversity applies the choice-of-law rules of the forum state." *Aqua-Marine Constructors v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997). The Court's jurisdiction derives from 28 U.S.C. § 1332, because there is a complete diversity of citizenship among the parties. (Doc. 1 ¶ 17.) Montana is the forum state; therefore, the Court must apply Montana's choice of law rules.

### I.    Montana's Choice of Law Approach

Montana applies the approach from the Restatement (Second) Conflict of Laws to disputes over which state's substantive law applies to a particular action.

---

Constitution or the Constitution of the State of Georgia in connection with an issue of public interest or concern.'" *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1348 (11th Cir. 2018) (quoting O.C.G.A. §9-11-11.1(b)(1)).

[2] Following the completion of briefing on the present motion, Montana Governor Greg Gianforte signed into effect House Bill 292, the Uniform Public Expression Protection Act. (Doc. 42.) Neither party suggests that the Act is retroactive, (*id.*) and therefore, the Court concludes it is inapplicable to Defendant's motion.

4

*Talbot v. Ainuu*, 2024 WL 896370, at *2 (D. Mont. Mar. 1, 2024) (citing *Buckles v. BH Flowtest, Inc.*, 476 P.3d 422, 424 (Mont. 2020)). The Restatement's Conflict of Laws analysis is two-part. *Buckles*, 476 P.3d at 424. Under Section 6 of the restatement, the Court must first determine whether the forum state has a statutory directive that is applicable. *Id.* If a statutory directive exists, the Court applies the statute. *Id.* In the absence of a statutory directive, the Court "considers the principles outlined in [Section] 6(2) with the specific section of the Restatement that is applicable to the case." *Id.*

### A. Section 6(2) Factors

Here, neither party asserts that a statutory directive exists, and the Court is unaware of a statutory directive that would apply to this case. The Court will therefore apply the principles set forth in § 6(2) along with the specific Restatement section(s) applicable to this case.

Section 6(2) of the Restatement provides the following factors to consider:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue;

(d) the protection of justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Talbot*, 2024 WL 896370, at *3.

The Montana Supreme Court recently applied the Section 6(2) factors to a defamation case. *Goguen v. NYP Holdings, Inc.*, 544 P.3d 868, 875–76 (Mont. 2024). In *Goguen*, the plaintiff, a Montana resident, sued a New York newspaper and journalist for defamation. *Id.* at 874–75. The newspaper moved to dismiss the action on the basis that the newspaper was protected by New York's fair report privilege. *Id.* at 876. The district court denied the newspaper's motion to dismiss, finding that the issue of privilege was a matter of Montana law. *Id.*

In determining which state's law should apply to the litigation, the Montana Supreme Court first considered the principles of Section 6(2). *Id.* at 880. As to the first factor, the court highlighted that New York's fair report privilege protects the speaker, and thus, "application of New York's privilege would respect New York's significant policy interests and substantive law on the particular issue." *Id.* The court determined that the respect of these policy interests and substantive law would foster a harmonious relationship between the laws of New York and Montana. *Id.*

As to the second and third factors, the court explained:

Although Montana does have an interest in protecting its citizens from defamation, the issue we are addressing under Montana's choice of law

6

> rules is the privilege and not the underlying defamation. While conduct in New York may impact residents of other states, the conduct nonetheless took place in New York. The New York legislature has spoken through its privilege regarding its policy and the broad scope of protection to be afforded the media. We conclude that New York has a stronger interest in the determination of the privilege issue which is due, in part, because the privilege protects the speaker, New York's privilege provides more protection to the press than Montana's, and the conduct occurred in New York.

*Id.* at 881 (internal citation omitted).

The court explained that the fourth factor "is less important in tort law because justified expectations have less impact in tort cases." *Id.* Nonethless, the court determined that the Defendant, as the holder of the privilege, "had a justifiable expectation that New York law would be applied . . . to its conduct." *Id.*

Regarding the fifth factor, the court explained that when there is a major difference between the laws of the states, the fifth factor is inapplicable. *Id.* at 882.

The court determined that the sixth factor weighed in favor of the Defendant, explaining that in a case "where the tortious conduct occurred in one state and the injury occurs nationwide," the certainty and predictability factor weigh in favor of applying the law of the state in which the conduct occurred. *Id.*

As to the final factor—ease of determination and application—the court determined that either state's law could be applied without difficulty. Therefore, this factor did not weigh in favor of either party.

Here, like in *Goguen*, the Section 6(2) factors favor the application of

Montana law.

The first factor—the needs of the interstate and international systems—favor application of the law of the speaker's state of domicile. Georgia's anti-SLAPP statute's stated purpose is protecting "participation by the citizens of Georgia in matters of public significance and public interest." OCGA § 9-11-11.1(a). This language makes clear that the statute protects the speech of Georgia citizens. Therefore, like in *Goguen*, because the asserted defense protects the speaker, this factor favors application of the law of the speaker's home state. *See* 544 P.3d at 880.

The second and third factors—relevant policies and interests of the forum state and other interested states in determining the issue—likewise favor application of Montana law. As explained by the Montana Supreme Court, a state's "interest in fixing the scope of a privilege applicable to conduct taking place within its borders is paramount." *Id.* at 881. Here, application of Georgia's anti-SLAPP statute would not further the statute's purpose. Like in *Goguen*, the second and third factors favor application of the law of the speaker's state of domicile.

The fourth factor, while less important in tort law, *see id.* at 881, likewise favors application of Montana law. Like in *Goguen*, Cohodes could have justifiably expected that his speech would be protected by defenses available in Montana. It would be less justifiable for Cohodes to expect that his speech was

8

protected by Georgia law, for the sole reason that the subject of his speech happens to be domiciled in Georgia.

Because the difference between Georgia and Montana law is not minor, the fifth factor does not apply to the analysis in this case.

The sixth factor—certainty, predictability, and uniformity of results—favors application of Montana law. Like in *Goguen*, because the tortious conduct occurred in one state and the injury occurred nationwide, application of the law of the state in which the conduct occurred—here, Montana—results in certainty and predictability for speakers.

Finally, the seventh factor—ease of determination and application—does not favor the application of either state's law. Holbrook contends that there is an ongoing dispute as to whether particular anti-SLAPP statutes apply in federal court. (Doc. 28 at 16–17.) However, the Ninth Circuit has held that anti-SLAPP motions to strike are "available against state law claims brought in federal court." *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013). Like in *Goguen*, "[r]egardless of which state's law is applied, the privilege can be determined and applied without difficulty." 544 P.3d at 882.

## B. Specific Restatement Section(s) Applicable[3]

After analyzing the Section 6(2) factors, the *Goguen* court examined "the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied." *Id.* Those factors, found at Section 145(2) of the Restatement, are as follows:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and

(d) the place where the relationship, if any, between the parties centered.

*Id.*

As to the first factor, the court found that the injury occurred where Goguen is domiciled, though the injury was not confined to Montana alone due to the nation-wide nature of the publication. *Id.* Therefore, the first factor weighed in

---

[3] As noted by Judge Brian M. Morris of this Court, Sections 149 and 150 of the Restatement provide guidance on the choice of law in defamation claims. *Talbot*, 2024 WL 896370, at *3. However, following Judge Morris's order in *Talbot*, the Montana Supreme Court issued its opinion in *Goguen*. In *Goguen*, the court followed its Section 6(2) analysis with a consideration of the factors found in Section 145(2). While the reason for the court's decision to focus its analysis on Section 145(2) but not Sections 149 and 150 is not immediately clear, the Court will follow the Montana Supreme Court's lead and consider the principles set forth in Section 145(2).

favor of Montana Law. The court found that the second and third factors also weighed in favor of applying New York law, because the conduct that caused the injury occurred in New York, and the privilege protects the speaker who was domiciled in New York. *Id.* The court found that the final factor also weighed in favor of applying New York law, because the privilege protects the media, the conduct occurred in New York, the Defendant's place of business was in New York, and the injury was not exclusive to Montana. *Id.* at 883.

Based on its examination of Sections 6 and 145, the court determined that "Montana's choice of law rules require [the court to] apply New York law to the fair report privilege at issue." *Id.*

Here, the Section 145(2) factors favor application of Montana law.

The first factor—place of injury—slightly favors application of Georgia law because Georgia is where Holbrook is headquartered. However, under *Goguen*, the significance of this factor is tempered by the fact that the speech at issue was broadcasted internationally, and therefore the injury is not confined to Georgia alone. 544 P.3d at 882. The second factor—place of the conduct causing the injury—favors application of Montana law, where the speech took place. *Id.* The third factor—domicile of the parties—favors application of Montana law. In *Goguen*, the court applied New York law in part "because the privilege [at issue] protects the speaker, the conduct occurred in New York, and the speaker [was]

11

located in New York." *Id.* While Holbrook is domiciled in Georgia, *Goguen* suggests that this factor should nonetheless favor application of the speaker's state law. Finally, the fourth factor does not favor application of either state's law "because there is no relationship between the parties aside from the publication[s] and lawsuit." *Id.*

The foregoing makes clear that, under Montana's choice of law analysis, Montana law applies to this case. Therefore, Georgia's anti-SLAPP statute is inapplicable to the speech at issue.

Accordingly, IT IS ORDERED that the motion (Doc. 18) is DENIED.

DATED this 24th day of November, 2025.

Dana L. Christensen, District Judge
United States District Court