Matt J. Kelly
TARLOW STONECIPHER
WEAMER & KELLY, PLLC
1705 West College St.
Bozeman, MT 59715-4913
Telephone: (406) 586-9714
Facsimile: (406) 586-9720
mkelly@lawmt.com

Andrew C. Phillips (*Pro Hac Vice*)
Mark Thomson (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
Hannah Menchel (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th Street NW, Suite 550
Washington, DC 20036
Telephone: (202) 318-3655
andy.phillips@mwpp.com
mark.thomson@mwpp.com
shannon.timmann@mwpp.com
hannah.menchel@mwpp.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| HOLBROOK HOLDINGS, INC., | Civil Action No. CV-24-175-BU-JTJ |
| Plaintiff, | |
| v. | **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES** |
| MARC COHODES, | |
| Defendant. | |

In its defamation action against Defendant Mark Cohodes, Plaintiff Holbrook Holdings has propounded some typical and predictable discovery requests. Despite repeated entreaties from Holbrook, however, Cohodes has failed to provide Holbrook with documents and information responsive to those requests. With no other option, Holbrook moves this Court to compel Cohodes to provide the information and documents.

## BACKGROUND AND PROCEDURAL HISTORY

Holbrook Holdings brought this defamation action against Cohodes to hold him responsible for falsely accusing Holbrook of fraud in connection with an investment bank called B. Riley, the stock of which Cohodes holds a short position in. [Compl., Dkt. 1.] After this Court denied Cohodes's special motion to dismiss, on December 24, 2025, Holbrook promulgated interrogatories and requests for production ("RFPs") on topics that are standard fare in defamation cases like this one. [Decl. of A. Phillips, Exs. 1 & 2.] In particular, Holbrook asked about Cohodes's documents and communications regarding Holbrook and its principals, documents and communications regarding B. Riley, the bases for Cohodes's accusations about Holbrook, and Cohodes's financial interests relating to B. Riley. [Phillips Decl., Ex. 1 at Irogs. 1, 5, 9; Ex. 2 at RFPs 2, 4, 5, 6.]

After Holbrook agreed to requested extensions, Cohodes served his responses to Holbrook's interrogatories and RFPs on February 27, 2025. [Phillips Decl., Exs.

1

3 & 4].  With respect to some of Holbrook's interrogatories, Cohodes flatly declined to respond, while for others, he provided a response that did not fairly address the substance of what Holbrook was asking.  Similarly, with respect to Holbrook's RFPs, Cohodes refused to provide documents in response to certain requests, while for others, he never explicitly refused to comply, but nevertheless has failed to produce responsive documents as of this filing, more than four months after the RFPs were served.  For instance, Cohodes has provided virtually no communications with third parties regarding Holbrook or B. Riley, even though such communications plainly exist, and in one instance he flatly denied having responsive communications with a third party that then produced such communications in response to a subpoena from Holbrook.  Cohodes has also withheld information about his relationship to B. Riley, even though that relationship is a central factor in this case and highly relevant to his motive in defaming Holbrook and to whether Cohodes acted with the requisite degree of fault.  Finally, despite this being a defamation case, with key issues including the truth or falsity of Cohodes's statements and his state of mind when making them, Cohodes has refused to fairly respond to a standard interrogatory that asks him to state the factual basis, if any exists, for his accusations that Holbrook engaged in fraud.

After receiving Cohodes's written discovery responses, Holbrook's counsel sent a letter to Cohodes's counsel on March 5, 2025, outlining in detail the many

deficiencies in Cohodes's discovery responses.  [Phillips Decl., Ex. 5.]  Cohodes's counsel responded on March 10, stating that he needed more time to review the matter.  [Phillips Decl., Ex. 6.]  His counsel then provided a "substantive" response on April 3, 2026 that failed to meaningfully respond to Holbrook's deficiency letter and did not commit to producing the materials Holbrook seeks.  [Phillips Decl., Ex. 7.] Essentially, Cohodes agreed only to produce a publicly filed declaration Cohodes submitted in a related case, which attached two documents that Cohodes had submitted to the SEC and that he said were responsive to Holbrook's discovery requests.  [Id.]

Because this token act did not remotely resolve or address the numerous issues Holbrook had raised, Holbrook wrote to Cohodes's counsel again on April 13, reiterating that his written responses were deficient, that Cohodes had produced virtually no communications with third parties regarding Holbrook or B. Riley when such communications plainly exist, that Cohodes denied having communications with one third party about Holbrook only to have that third party produce such communications, and that Cohodes still had not provided sufficient responses to Holbrook's interrogatories.  [Phillips Decl., Ex. 8.]  Cohodes's counsel responded on April 17, stating that he had been too busy to fully respond to Holbrook's letter, but agreeing to produce additional tips, complaints, and referrals ("TCRs") that Cohodes submitted to the SEC (which, again, comprise only a small fraction of the

3

universe of materials Holbrook has requested). Otherwise, Cohodes's counsel only provided vague assurances that he would continue to look into the bulk of the issues Plaintiff had raised and possibly provide additional materials in the future. [Phillips Decl., Ex. 9.] On April 23, 2026, Cohodes produced the referenced TCRs, but did not provide any other documents or communications, nor did he supplement his existing discovery responses. [Phillips Decl. Ex. 10.] On May 6, 2026, counsel for Holbrook reached out to counsel for Cohodes again in writing, noting that Holbrook planned to file a motion to compel in light of Cohodes's failure to supplement his interrogatories or produce plainly relevant documents in his possession, and asking if Cohodes would commit to curing those deficiencies within fourteen days. [Phillips Decl. Ex. 12.] Counsel for Cohodes did not agree to so commit. [*Id*.] As of the filing of this Motion, Cohodes has taken no further steps to address the issues Holbrook has raised or to produce responsive documents and communications.

With over four months having passed since Holbrook served its interrogatories and RFPs on Cohodes, it has become apparent that Cohodes and his counsel have little sense of urgency to comply with the Federal Rules and provide Holbrook with good-faith interrogatory responses and responsive, relevant documents and communications in his possession. For instance, Cohodes has failed to produce communications concerning Holbrook, and has denied having certain communications, even as third-party discovery has unearthed documents that flatly

4

contradicted that denial; he has claimed he has produced all of his communications regarding B. Riley, even when that is clearly not true; he has withheld information about his financial interests regarding B. Riley, even though that relationship is a central part of this case; and he has declined to provide a sworn response stating the supposed bases for the false and damaging public accusations he made about Holbrook.  [Phillips Decl. Exs. 3 & 4.]

Because Holbrook needs the requested documents and information to prosecute this case, and because its good faith efforts over several months to obtain compliance without the Court's intervention have been in vain, Holbrook moves this Court to compel Cohodes to respond fully and honestly to the interrogatories and RFPs as propounded.

## LEGAL STANDARD

A party is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  When a party fails to provide discovery of a relevant, nonprivileged matter, and the parties' attempts to resolve the dispute without court intervention are unsuccessful, the opposing party may move for an order compelling discovery.  Fed. R. Civ. P. 37(a)(3)(A).

In a motion to compel discovery, the movant bears the initial burden of showing that the information and documents sought are relevant.  *Brewer v. BNSF*

*Railway Co.*, 2018 WL 1756432, at *1 (D. Mont. Jan. 11, 2018).  In civil discovery, that burden is famously light and movants can meet it by merely "describ[ing] with a reasonable degree of specificity the information they hope to obtain and its importance to their case."  *Alacraz v. Marten Transp. Ltd.*, 2025 WL 73060 (E.D. Cal. Jan. 10, 2025).  Once the movant carries its burden, the party opposing discovery takes on the "heavy burden" of showing why discovery should not be compelled, including by clarifying, explaining, and supporting its objections.  *See Binder v. State Farm Fire & Cas. Co.*, 2008 WL 11348725, at *1 (D. Mont. May 13, 2008).

## **ARGUMENT**

Cohodes's responses to several of Holbrook's discovery requests are facially deficient, despite the obvious relevance of the documents and information sought.

**1. Interrogatory #1: Seeking information about Cohodes's communications regarding Holbrook and its principals**

Holbrook's first interrogatory asks Cohodes to "[d]escribe each instance in which [he] communicated about Holbrook or any of its principals … since January 1, 2022."  [Phillips Decl. Ex. 1 at Irog. 1.]  That information is relevant because Cohodes's contemporaneous communications about Holbrook could illuminate his subjective understanding of Holbrook and reveal his motives for leveling false accusations about Holbrook.

Cohodes's response to Holbrook's first interrogatory has thus far consisted of

6

a smattering of names of individuals, and a list of TCRs he filed with the SEC.[1] [Phillips Decl., Ex. 3 at Irog. 1.]   That is insufficient.   Federal Rule of Civil Procedure 33(b)(3) requires each responding party to answer each interrogatory "separately and *fully* in writing under oath."   Fed. R. Civ. P. 33(b)(3) (emphasis added).   The interrogatory does not ask only about Cohodes's communications with the SEC; it asks about all his communications regarding Holbrook.   Cohodes's response makes no effort to describe the substance of his communications with any of the individuals listed, let alone when and how he communicated with them, as the interrogatory requests.   Nor has he produced any communications with the listed individuals that could provide that information.

There is also good reason to believe that the list Cohodes provided of third parties with whom he communicated about Holbrook is incomplete.   For example, Cohodes's response to Holbrook's first interrogatory does not identify Hedgeye Risk Management as a party that with whom Cohodes communicated concerning Holbrook—and in response to a separate RFP asking him to produce any communications with Hedgeye about Holbrook, Cohodes claimed none exist. [Phillips Decl., Ex. 3 at Irog. 1; Ex. 4 at RFP 4.]   But when Holbrook served a third-party subpoena on Hedgeye asking for any communications with Cohodes about

---

[1] "TCR" stands for "Tip, Complaint, or Referral." A TCR is a form used by would-be whistleblowers to report potential securities-law violations to the SEC.

7

Holbrook, Hedgeye produced multiple email communications with Cohodes about Holbrook and the very defamatory statements that are at issue in this case. [Phillips Decl. ¶ 12.]

In sum, it is evident that Cohodes has had numerous relevant communications about Holbrook with third parties beyond the SEC, but he has refused to fully identify and describe them in response to Holbrook's first interrogatory. As discussed below, he has also failed to produce any of those communications in response to Holbrook's RFPs asking for the communications themselves. Thus, Cohodes is withholding vitally important information that will reflect upon his state of mind, knowledge, and motives in defaming Holbrook. And because Holbrook is being kept in the dark about Cohodes's communications with third parties concerning Holbrook and the statements Cohodes made about Holbrook, Cohodes is hamstringing Holbrook's ability to take meaningful discovery of those third parties. The Court should order Cohodes to promptly respond to Interrogatory No. 1 fully, in writing, and under oath, as required.

2. **Interrogatory #5: Seeking any factual bases for Cohodes's contention that Holbrook or its principals engaged in fraud**

Holbrook's fifth interrogatory asks Cohodes to state whether he contends that Holbrook or any of its principals engaged in fraud, and if he does so contend, to state the factual basis for that contention. [Phillips Decl. Ex. 1 at Irog. 5.] That request is plainly relevant to this litigation which concerns public statements by Cohodes

***accusing Holbrook of being engaged in fraud***.  Essentially, the interrogatory requires Cohodes to own or disown those accusations by definitively stating, under oath, whether or not he contends that Holbrook did engage in fraud, and if he does, to state the factual basis for that contention.

In response to Holbrook's fifth interrogatory, Cohodes refused to provide a sworn, substantive response.[2]  [Phillips Decl. Ex. 3 at Irog. 5.]  When Holbrook complained about this obvious deficiency, Cohodes's counsel, by letter, referred to a declaration from another action, along with an October 4, 2024 letter from Cohodes's former counsel and some TCRs Cohodes submitted to the SEC.  [Phillips Decl., Ex. 7 at 2-3.]  That is insufficient, because as noted, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  Cohodes's unsworn response from his counsel—referencing an assemblage of documents, some sworn, others not; some from Cohodes himself, others not; none directly addressing or even mentioning the interrogatory at issue—does not satisfy that requirement.  This Court should compel Cohodes to respond fully, truthfully, and under oath to the interrogatory as

---

[2] Cohodes's response claimed that he could not answer the interrogatory because discovery is not complete.  But that is no answer.  The interrogatory asks about Cohodes's position on the issue as of now, which is relevant to his state of mind at the time he made his public accusations of fraud.  Should discovery change his answer, he of course has the ability, and indeed the duty, to supplement it down the road.

propounded.

### 3. Interrogatory #9: Seeking details about each instance since 2021 in which Cohodes engaged in any transaction related to B. Riley securities or derivatives

Holbrook's ninth interrogatory asks for the details of instances in which Cohodes has engaged in transactions related to B. Riley securities or derivatives. [Phillips Decl., Ex. 1 at Irog. 9.]  That request is relevant because, as Holbrook has alleged, Cohodes's motivation to defame Holbrook stemmed in part from his having taken a short position in B. Riley, such that he had a financial incentive to defame Holbrook after it publicly defended B. Riley.  [Compl., Dkt. 1, at ¶ 51.]

In response to Holbrook's ninth interrogatory, Cohodes stated that he would not provide any information about his involvement in transactions regarding B. Riley because it suffices that Holbrook knows Cohodes has taken a short position on B. Riley securities. [Phillips Decl., Ex. 3 at Irog. 9.]  To Cohodes, "the terms of each transaction, the date of each transaction, the parties to each transaction, the trading platforms for each transaction and finally [his] 'profits and losses from each transaction' are not relevant."  [*Id*.]

That simply isn't so.  Consider, for example, just the first item in Cohodes's list: "the terms of each transaction."  In ascertaining Cohodes's motives to push a false narrative about B. Riley—and Holbrook, which had defended B. Riley—the amount that Cohodes stood to lose or gain from the narrative is plainly relevant.  The

10

more money Cohodes had at stake in shorting B. Riley, the stronger his motive to make up accusations to advance his narrative. Holbrook is entitled to answers and this Court should compel them. *See Salazar v. Continental Constr. of Mont., LLC*, No. CV-11-16-BLG-CSO, 2012 WL 1438892, at *1 (D. Mont. Apr. 25, 2012) ("The burden lies on the objecting party to show that a discovery request is improper. Where a party's objections are themselves vague and impermissibly overbroad, and no specifics are given, the objecting party fails to carry its burden.").

### 4. RFP #2: Seeking all documents and communications regarding Holbrook or its principals

Holbrook's second RFP asks for all Cohodes's documents and communications referencing or relating to Holbrook or its principals. [Phillips Decl., Ex. 2 at RFP 2.] Those materials are clearly relevant to a case concerning Cohodes's publications about Holbrook because they help contextualize and frame those publications, as well as shed light on Cohodes's motives and state of mind when making them. In response, however, Cohodes has produced only a handful of documents—copies of correspondence between his counsel and Holbrook's counsel, some public social-media posts he made, and some TCRs he and another individual co-filed with the SEC. He has produced *no private communications with any third parties* (aside from the SEC), even though such communications plainly exist (and, as noted above, he has also refused to identify and describe those communications in response to Plaintiff's interrogatories).

11

For example, Cohodes co-filed several TCRs with the SEC in collaboration with a man named James Gibson, which obviously required communication and coordination with Gibson by email or text message. But no communications with Gibson have been produced. Holbrook also obtained, via third-party subpoena, responsive communications about Holbrook between Cohodes and third-party Hedgeye Risk Management, even though Cohodes himself did not produce those communications and worse, falsely denied that they existed. [Phillips Decl., ¶ 12; Ex. 4 at RFP 4.] And when Holbrook served third party Orso Partners, LP with a subpoena seeking its communications with Cohodes about Holbrook, Orso Partners did not deny that any existed, but instead objected to the subpoena on the grounds that Holbrook should obtain those materials from Cohodes, the defendant, before burdening a third party with a subpoena. [Phillips Decl., Ex. 11.] That is a reasonable enough objection under the circumstances, except that it leaves Holbrook with nothing because *Cohodes has not produced any of his communications with Orso Partners about Holbrook*.

In sum, it is undeniable that Cohodes has communicated by text, email, and the like with numerous third parties regarding Holbrook and the statements at issue in this case. But those communications have not been produced—more than four months after Holbrook asked for them—and there is no indication that Cohodes has undertaken any efforts to identify, collect, and disclose them. Cohodes should be

12

ordered to do so promptly.  *See Keller v. Nat'l Farmers Union Prosperity & Cas. Co.*, No. CV 12-72-M-DLC-JCL, 2013 WL 27731, at *2 (D. Mont. Jan. 2, 2013) (granting "motion to compel the production of the materials sought" in request for production because responding party had "not shown or argued that producing those records would be unduly burdensome, or that" "the discovery request" was propounded for "purposes of harassment").

   **5.  RFP #4:  Seeking all Cohodes's communications with representatives of Hedgeye that relate or reference Holbrook or its principals**

Holbrook's fourth RFP asked for all Cohodes's communications with Hedgeye and its representatives.  [Phillips. Decl. Ex. 2 at RFP 2.]  Those communications are relevant because, after publishing the defamatory posts at issue in this litigation, Cohodes appeared on a Hedgeye broadcast to double down on his attacks on Holbrook—while simultaneously admitting that he knows nothing about Holbrook, despite having publicly accused Holbrook of fraud.  [Compl., Dkt. 1 at ¶ 78.]

Cohodes's response to Holbrook's fourth RFP asserted that Cohodes does not know of any responsive communications in his possession.  [Phillips. Decl., Ex. 4 at RFP 4.]  That response is obviously false.  A third-party subpoena subsequently resulted in Hedgeye producing numerous communications between its agents and Cohodes about Holbrook and his appearance on the Hedgeye program to discuss his claims about Holbrook.  [Phillips Decl. ¶ 12.]  So, either Cohodes lied when he said

he does not possess communications with Hedgeye about Holbrook, or he made no effort to search for them, or he has destroyed them. When asked which of those options is correct, Cohodes's counsel deflected by illogically insisting the response was not untruthful while simultaneously admitting that the Hedgeye production reflected Cohodes communicating with Hedgeye about Holbrook. [Phillips Decl., Ex. 9 at 2.]

In this instance, Holbrook was fortuitously able to obtain these communications via third-party subpoena because it suspected that Cohodes had communicated with Hedgeye about Holbrook. But Holbrook should not have to undertake that effort, and it cannot do so when it does not know who all Cohodes was communicating with. The Hedgeye example serves to underscore that Cohodes is not being forthcoming in his written discovery responses, and that he has not made an honest effort to identify, collect, and produce relevant communications in his possession.

### 6. RFP #6: Seeking communications referencing or relating to B. Riley

Holbrook's sixth RFP asked for all communications referencing or relating to B. Riley, particularly those concerning Cohodes's investment activities involving B. Riley. [Phillips Decl. Exh. 2 at RFP 2.] Again, Cohodes's shorting of B. Riley stock, and his communications regarding B. Riley generally, are highly relevant to this case. Cohodes spent months publicly attacking B. Riley as a fraud in an effort

to drive its stock price down, and when Holbrook came to B. Riley's defense, Cohodes then began publicly accusing Holbrook of fraud. Cohodes's private communications regarding B. Riley and his short position will shed light on Cohodes's contemporary state of mind and his motive to defame Holbrook. And it is of course relevant to know whether Cohodes ever claimed privately—as he did publicly—that Holbrook was complicit in B. Riley's supposed fraud.

In response to Holbrook's sixth RFP, Cohodes stated that he has "produced everything within [his] power." [Phillips Decl., Ex. 3 at RFP 6.] That cannot possibly be true. Cohodes has been an active trader of B. Riley stock and a very, very vocal critic of B. Riley to anyone who would listen. Yet his production to date does not include any emails or text messages *with anyone* about B. Riley. Particularly in light of Cohodes's failure to adequately respond to Holbrook's other discovery requests (detailed above), the most likely explanation is that Cohodes simply has not made any good-faith effort to conduct a search to collect his emails, text messages, and other electronic and written correspondence for responsive communications. Once more, then, this Court should compel Cohodes to perform the requisite search and produce the requisite materials immediately, so that Holbrook can finally review the evidence it needs to diligently advance its claim.

## CONCLUSION

Holbrook comes to the Court reluctantly. For months, Holbrook has

15

repeatedly urged Cohodes to comply with his discovery obligations and produce information and documents that are plainly relevant to the issues in this action. Cohodes simply has not done so, and at this point Holbrook has no reason to believe that he will stop stonewalling unless he is compelled to do so by the Court. The Court should issue an order requiring Cohodes to respond fully to Holbrook's requests within 14 days, with sanctions if the responses are subsequently shown to have been incomplete.

Dated: May 13, 2026

> _/s/ Matthew J. Kelly_
> Matthew J. Kelly
> TARLOW STONECIPHER WEAMER
> & KELLY, PLLC
> 1705 West College Street
> Bozeman, MT 59715
> (406) 586-9714
> mkelly@lawmt.com
>
> Andrew C. Phillips (_Pro Hac Vice_)
> Mark Thomson (_Pro Hac Vice_)
> Shannon B. Timmann (_Pro Hac Vice_)
> Hannah Menchel (_Pro Hac Vice_)
> MEIER WATKINS PHILLIPS PUSCH LLP
> 1120 20th St NW, Suite 550
> Washington, DC 20036
> (202) 318-3655
> andy.phillips@mwpp.com
> mark.thomson@mwpp.com
> shannon.timmann@mwpp.com
> hannah.menchel@mwpp.com
>
> _Counsel for Plaintiff Holbrook Holdings,_
> _Inc._

16

## CERTIFICATE OF SERVICE

I hereby certify that, on May 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Matthew J. Kelly*
Matthew J. Kelly

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the foregoing document was prepared using Times New Roman 14-point typeface, contains 3,596 words, which is under the 6,500 word page maximum count pursuant to Local Rule 7.1(d)(2)(A). This certificate was prepared in reliance on the word-count function of Microsoft Word.

*/s/ Matthew J. Kelly*
Matthew J. Kelly