Matt J. Kelly
TARLOW STONECIPHER
WEAMER & KELLY, PLLC
1705 West College St.
Bozeman, MT 59715-4913
Telephone: (406) 586-9714
Facsimile: (406) 586-9720
mkelly@lawmt.com

Andrew C. Phillips (*Pro Hac Vice*)
Mark Thomson (*Pro Hac Vice*)
Shannon B. Timmann (*Pro Hac Vice*)
Hannah Menchel (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th Street NW, Suite 550
Washington, DC 20036
Telephone: (202) 318-3655
andy.phillips@mwpp.com
mark.thomson@mwpp.com
shannon.timmann@mwpp.com
hannah.menchel@mwpp.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| HOLBROOK HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MARC COHODES, <br><br> Defendant. | Civil Action No. CV-24-175-BU-JTJ <br><br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES** |

To overcome Plaintiff Holbrook Holdings' Motion to Compel Discovery Responses, Defendant Marc Cohodes bears the "heavy burden" of clarifying, explaining, and supporting his objections to the discovery requests at issue. *Binder v. State Farm Fire & Cas. Co.*, No. 07-cv-29-M-DWM-JCL, 2008 WL 11348725, at *1 (D. Mont. May 13, 2008). He cannot discharge that burden with mere "generalized, conclusory, or speculative arguments"; rather, he "must specifically detail the reasons why each request is irrelevant." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) *see also, e.g.*, *Teichgraeber v. Mem'l Union Corp.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996) ("More than a conclusory statement that the discovery is irrelevant must be offered, the opposing party must show specifically how the request is not reasonably calculated to lead to the discovery of admissible evidence.").

Cohodes barely tries to carry that burden. Instead, he devotes most of his Opposition to reciting the smattering of discovery he has provided and then asserting, without support, that nothing more should be required of him. In the few instances where he tries explaining his objections to specific requests, his explanations are superficial, conclusory, and completely unsupported by the record or any caselaw. Indeed, Cohodes does not cite a single precedent or rule anywhere in his Opposition; he refers only to what he "believes" and to his personal opinions about Holbrook's claims. Because Cohodes has come nowhere close to carrying his

1

burden in opposing Holbrook's Motion to Compel, the Court should grant the Motion immediately as to each of the six discovery requests at issue.

### 1. Interrogatory #1: Seeking information about Cohodes's communications regarding Holbrook and its principals.

Holbrook's first interrogatory asks Cohodes to "[d]escribe each instance in which [he] communicated about Holbrook or any of its principals … since January 1, 2022." (Dkt. 53-2, Ex. 1 at Irog. 1.) Cohodes's response so far has consisted of a smattering of names of individuals, as well as some TCRs he filed with the SEC.[1] (Dkt. 53-4, Ex. 3 at Irog. 1.)

That response is insufficient for all the reasons Holbrook laid out in its brief in support of the Motion. (*See* Dkt. 53 at 7.) In his Opposition, Cohodes never engages with, let alone refutes, those reasons. Instead, he baldly asserts that he:

> believes that at this point in the discovery stage, [he] has provided more than sufficient information and documentation responsive to the interrogatory as well as [a commitment] to continue to search for any additional information limited to the scope of the interrogatory which only sought communications about Holbrook or any of its principals and no one else.

(Dkt. 55 at 9.)

That's pure argle-bargle. The applicable standard is not what Cohodes "believes" should suffice. *See Marshall v. The Billings Clinic*, No. 14-cv-93-BLG-

---

[1] "TCR" stands for "Tip, Complaint, or Referral." A TCR is a form used by would-be whistleblowers to report potential securities-law violations to the SEC.

SPW-CSO, 2015 WL 7574758, at *4 (D. Mont. Nov. 25, 2015) ("no party may unilaterally decide what is relevant and produce only those documents she chooses to produce"). Rather, Cohodes's obligation—at this or any other "point in the discovery stage"—is to respond to each duly propounded interrogatory "to the fullest extent possible." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013) (citing Fed. R. Civ. P. 33(b)). Cohodes has plainly not met that obligation here (his unjustified and unsupported belief notwithstanding) for all the unrebutted reasons set out in Holbrook's brief in support of its Motion. (Dkt. 53 at 7.)

2. **Interrogatory #5: Seeking any factual bases for the contention that Holbrook or its principals engaged in fraud.**

Holbrook's fifth interrogatory asks Cohodes to state whether he contends that Holbrook or any of its principals engaged in fraud, and if he does so contend, to state the factual basis for that contention. (Dkt. 53-2, Ex. 1 at Irog. 5.) In his Opposition, Cohodes asserts that he need not respond to the interrogatory because "the phrase 'has engaged in fraud' does not appear in his posts" at issue in this action. (Dkt. 55 at 9.)

That assertion borders on frivolous. Nothing anywhere in the law permits a defamation defendant to ignore an interrogatory just because it asks about the thrust of the allegedly defamatory publication instead of reciting the exact language from the publication. And to the extent Cohodes's objection is that none of his posts accuse Holbrook of fraud, the posts cannot and do not bear that reading. One of them

expressly charges that Holbrook "is in on the Fraud"; another accuses Holbrook of taking a "kickback"; and the third proposes reporting Holbrook to the SEC for investigation. (Dkts. 29-1, 29-2, 29-3, Exs. 1-3.) Readers predictably interpreted the posts to accuse Holbrook of fraud, as when one responded by writing, "I'd bet serious coin there's something damning in [Holbrook's records] for law enforcement to probe." (Dkt. 29-4, Ex. 4.) Cohodes himself has admitted, proudly, that he published one of the posts precisely to convey to his followers "that Holbrook is corrupt." (Dkt. 29-8, Ex. 8 at 5.) His suggestion, now, that the posts do not accuse Holbrook of fraud is as implausible as it is self-serving.[2]

But even if there were some ambiguity about the contents of Cohodes's posts, a defendant may not unilaterally construe or respond to discovery requests in a way that excludes a theory of the plaintiff's case that was pled in the complaint. *See Evox Prods., LLC v. LKQ Corp.*, No. 5:24-cv-2259-SRM-SPx, 2026 WL 712917, at *2 (C.D. Cal. Feb. 25, 2026) ("defendant is not free to unilaterally narrow the definitions contained within plaintiff's discovery requests to exclude a theory of plaintiff's case that was pled in the Complaint"); *Treasure Island, LLC v. Affiliated Fm Ins. Co.*, No. 220-cv-965-JCM-EJY, 2023 WL 6295500, at *4 (D. Nev. Sept. 26, 2023) ("Federal courts do not typically tolerate a party unilaterally and unreasonably

---

[2] That, presumably, is why, even in his failed anti-SLAPP motion, Cohodes never attempted to argue that the posts did not accuse Holbrook of fraud.

deciding that the requested discovery is not relevant or discoverable under proportionality based solely on its own litigation position."); *Genevieve Deming v. Kenco Logistics Servs., LLC*, No. 14-cv-489-JGB (DTBx), 2015 WL 13916302, at *2 (C.D. Cal. Jan. 23, 2015) ("It is not defendant's place to limit its discovery obligations unilaterally based on what *it* wants a factfinder to consider"). Holbrook absolutely contends that Cohodes's posts accused it of engaging in fraud, and a jury is entitled to reach that conclusion. Thus, it is plainly relevant to ask—and to require Cohodes to state a firm position on—whether he contends that Holbrook engaged in fraud, ***irrespective of how he believes his posts should be interpreted***.

Cohodes obviously does not want to have to answer that question, so he is simply dodging it. Allowing him to continue withholding relevant and responsive information just because he disagrees with a premise of Holbrook's lawsuit would put the fox in charge of the henhouse and effectively deny Holbrook troves of discoverable information based on Cohodes's unexplained and unsupported objections. *See Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) ("a party is entitled to seek discovery on its theory of the facts and the law and is not limited in discovery by the opponent's theory"). Cohodes must be compelled to respond to the interrogatory as propounded.

> **3. Interrogatory #9: Seeking details about each instance since 2021 in which Cohodes engaged in any transaction related to B. Riley**

5

**securities or derivatives.**

Holbrook's ninth interrogatory asks for specific details about each instance since 2021 in which Cohodes engaged in transactions related to B. Riley securities or derivatives. (Dkt. 53-2, Ex. 1 at Irog. 9.) Cohodes initially responded by refusing to provide any information about his involvement in transactions regarding B. Riley. (Dkt. 53-4, Ex. 3 at Irog. 9.) Eventually, though, he provided a supplemental answer adding "a narrative as to when he started shorting B. Riley, the approximate value of B. Riley at that time and a summary of the events that took place from the fall of 2023 until late summer of 2024." (Dkt. 55 at 10.)

Cohodes does not—because he cannot—contend that his supplemental answer gives Holbrook the information it seeks in its ninth interrogatory. Instead, he offers two purported rationales for why his (non-)responses are adequate. The first is that "B. Riley is not a party to this action" and "is not alleging that it was defamed by Cohodes at any time." (Dkt. 55 at 10.) That is a *non sequitur*. There is no prohibition on posing interrogatories about non-parties, nor are interrogatories in defamation cases restricted to asking about people or entities who themselves claim to have been defamed. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b).").

Cohodes's second purported rationale for his (non-)responses is that the little information he's provided "detail[s] factually why B. Riley was a financial disaster

6

and the relationship between Holbrook and B. Riley and other associated companies, all of which are held in Holbrook's mutual fund." (Dkt. 55 at 11.) But Holbrook has not asked for information about "why B. Riley was a financial disaster," nor has it asked for information about its own relationships with B. Riley or any other companies. Cohodes cannot avoid answering the interrogatory Holbrook posed by instead answering a different question he might wish it had posed. *See* Fed. R. Civ. P. 33(b)(3); *Smith v. Logansport Cmty. Sch. Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991). Again, this Court must compel him to answer the interrogatory as Holbrook propounded it.

### 4. RFP #2: Seeking documents and communications regarding Holbrook or its principals.

Holbrook's second request for production ("RFP") asks for Cohodes's documents and communications referencing or relating to Holbrook or its principals. (Dkt. 53-3, Ex. 2 at RFP 2.) In his Opposition, Cohodes asserts that "these documents and communications have been produced to Holbrook prior to the filing of [its] Motion to Compel and are attached to Cohodes's First Supplemental Discovery Responses." (Dkt. 55 at 11.)

That simply isn't true, though. As Holbrook explained in its brief in support of its Motion—in another line of argument that Cohodes completely ignores— Cohodes "has produced ***no private communications with any third parties*** (aside from the SEC), even though such communications plainly exist." (Dkt. 53 at 11.)

7

For instance, he "co-filed several TCRs with the SEC in collaboration with a man named James Gibson, which obviously required communication and coordination with Gibson by email or text message. But no communications with Gibson have been produced." (Dkt. 53 at 12.) Cohodes's Opposition does not even touch on that point or others like it.

Similarly, Cohodes's discovery responses repeatedly and erroneously treat Holbrook's third-party subpoenas as excusing Cohodes from complying with his discovery obligations. For example, in his supplemental responses to Holbrook's RFPs, Cohodes disclaims any obligation to produce responsive communications with Orso Partners because Holbrook "has served subpoenas duces tecum" on Orso. (Dkt. 55-2 at 3.) But, as Cohodes well knows—because Holbrook has told him (*e.g.*, Dkt. 53 at 12)—Holbrook has not received **any** responsive materials from Orso because Orso has "objected to the subpoena on the ground that Holbrook should obtain [the responsive materials] from Cohodes, the defendant, before burdening a third party with a subpoena." (Dkt. 53 at 12.) Especially under those circumstances, Cohodes's bare reference to the Orso subpoena is not an adequate response to Holbrook's second RFP. *See Tradebank Int'l Franchising Corp. v. Fla. Barter Exch., LLC*, No. 1:12-cv-2810-RLV-JSA, 2014 WL 12861202, at *16 (N.D. Ga. May 29, 2014) ("third party discovery is not a substitute for complete responses from Defendants").

8

Holbrook served these requests *in December*. It is absurd that today, some six months later, despite repeated requests and a motion to compel, Cohodes still has not produced his emails, text messages, and social media direct messages regarding Holbrook. Because Cohodes's contemporary intent and state of mind are core issues in this defamation case, the materials sought in Holbrook's second RFP could not be more relevant and their production is crucial to Holbrook's ability to move this case forward. The time for excuses and vague, some-day assurances that Cohodes and his counsel will attempt to locate these materials is long past. Cohodes should be ordered to immediately produce all documents and communications responsive to Holbrook's second RFP.

5. **RFP #4: Seeking all Cohodes's communications with representatives of Hedgeye that relate or reference Holbrook or its principals.**

Holbrook's fourth RFP asks for all Cohodes's communications with Hedgeye and its representatives. (Dkt. 53-3, Ex. 2 at RFP 2.) Cohodes's initial response to Holbrook's fourth RFP asserted that Cohodes does not know of any responsive communications in his possession. (Dkt. 53-5, Ex. 4 at RFP 4.) That response was obviously false because a third-party subpoena subsequently resulted in Hedgeye producing numerous communications between its agents and Cohodes about Holbrook and his appearance on a Hedgeye broadcast to discuss his claims about Holbrook. (Dkt. 53-1 ¶ 12.) Confronted with that evidence, Cohodes now asserts that the communications Hedgeye produced are the only ones he had with Hedgeye,

9

and that there is therefore no need for him to produce the communications. (Dkt. 55 at 12.)

Even assuming Cohodes is telling the truth (this time) about his communications with Hedgeye, he is wrong that there is no need for him to produce those communications. The Scheduling Order in this case expressly distinguishes between materials produced by parties and materials produced by non-parties. (Dkt. 51 at 5.) Under that Order, had Cohodes himself produced the Hedgeye communications—as Rule 34 requires—he would have been obligated to state, at the time of production, whether he objected to the communications' foundation or authenticity. (Dkt. 51 at 5.) But because Hedgeye produced the only copies of the communications currently in the record, the discovery order gives Cohodes until the close of discovery to note any objection to the communications' foundation or authenticity. (Dkt. 51 at 5.) Thus, because of Cohodes's flagrant violation of Rule 34, Holbrook is currently in the dark as to whether Cohodes will object to the Hedgeye communications on foundation or authenticity grounds. He should be required to either produce his communications with Hedgeye or immediately waive any foundation and authenticity objections to the Hedgeye-produced communications.

**6.  RFP #6: Seeking communications referencing or relating to B. Riley**

Holbrook's sixth RFP asks for all communications referencing or relating to

B. Riley, particularly those concerning Cohodes's investment activities involving B. Riley. (Dkt. 53-3, Exh. 2 at RFP 2.) In his Opposition, Cohodes points to the handful of TCRs he has produced while contending that his other communications about B. Riley are irrelevant because "the issues in this case revolve around three separate posts involving Holbrook, not B. Riley." (Dkt. 55 at 12-13.)

Neither of Cohodes's justifications for his non-response withstands scrutiny. Regardless of whether the TCRs are responsive, Cohodes himself admits he is withholding other responsive communications. (Dkt. 55 at 13 ("Undoubtedly, Cohodes may have communicated [with] third parties from time to time concerning B. Riley since he was heavily invested in researching and investigating this company").) In other words, he admits his response to the RFP is incomplete. *See Athridge v. Aetna Cas. & Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("The defendant, having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide the question of relevance which is unquestionably the decision of the judge.").

Cohodes's contention that Holbrook's RFP is irrelevant because "the issues in this case revolve around three separate posts involving Holbrook, not B. Riley," is also unavailing. For one thing, Cohodes is simply wrong that the posts at issue in this case do not involve B. Riley. Just the opposite, each post expressly mentions B. Riley, in addition to referring to Holbrook. (*See* Dkts. 29-1, 29-2, 29-3, Exs. 1-

11

3.) Beyond that, though, Holbrook has already articulated a clear and direct rationale for the discovery requests. (Dkt. 53 at 14-15.) Cohodes's conclusory and unsubstantiated—indeed, flat-out false—assertion that B. Riley has nothing to do with the posts at issue in this case is not sufficient to carry his burden of clearly explaining and supporting his objection that Holbrook's sixth RFP is irrelevant. *See Binder*, 2008 WL 11348725, at \*1; *see also Kinetic Concepts, Inc. v. ConvaTec, Inc.*, No. 1:08-cv-918, 2010 WL 1912245, at \*24-25 (M.D.N.C. May 12, 2010) (recognizing that unilateral "relevance" determinations in discovery responses impede discovery).

## **CONCLUSION**

The Court should require Cohodes to respond fully to Holbrook's requests as propounded, and to produce all responsive documents requested, within 14 days, with sanctions if the responses are subsequently shown to have been incomplete.

Dated: June 11, 2026

> */s/ Matthew J. Kelly*
> Matthew J. Kelly
> TARLOW STONECIPHER WEAMER
> & KELLY, PLLC
> 1705 West College Street
> Bozeman, MT 59715
> (406) 586-9714
> mkelly@lawmt.com
>
> Andrew C. Phillips (*Pro Hac Vice*)
> Mark Thomson (*Pro Hac Vice*)
> Shannon B. Timmann (*Pro Hac Vice*)

Hannah Menchel (*Pro Hac Vice*)
MEIER WATKINS PHILLIPS PUSCH LLP
1120 20th St NW, Suite 550
Washington, DC 20036
(202) 318-3655
andy.phillips@mwpp.com
mark.thomson@mwpp.com
shannon.timmann@mwpp.com
hannah.menchel@mwpp.com

*Counsel for Plaintiff Holbrook Holdings, Inc.*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 11, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Matthew J. Kelly*
Matthew J. Kelly

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the foregoing document was prepared using Times New Roman 14-point typeface, contains 2,796 words, which is under the 3,250-word page maximum count pursuant to Local Rule 7.1(d)(2)(B). This certificate was prepared in reliance on the word-count function of Microsoft Word.

*/s/ Matthew J. Kelly*
Matthew J. Kelly